M. E. HILLIARD, et al. v. CITY OF ASHEVILLE.

*Municipal   Corporations—Street   Improvements—Assessment of Benefits—Taxation—Uniformity—Due Process of Law—Injunction.*

1. Where the charter of a city provides that each street or portion of a street improved shall be a taxing district by requiring the total cost of improvement on each street or portion of street improved to be ascertained and one-third thereof assessed on the property abutting on each side of the street according to the frontage of each lot, and also provides methods whereby each lot owner may contest the assessment; *Held*, that such charter is not in violation of Section 9 of Article VII. requiring all taxes to be uniform, or of Section 3 of Article V. requiring a uniform rule for taxing real estate according to its true value in money.

2. Under such charter provisions the question of eminent domain, or taking private property for public use, does not arise; and, since ample notice of the assessment is provided for, with opportunity for the lot owner to be heard, it does not deprive the owner of his property without "due process of law," (Section 1 of 14th Amendment to Constitution of United States and Section 17 of Article 1 of Constitution of North Carolina.)

3. Such charter, in requiring that the cost of the total improvement in such "taxing district" shall be ascertained and one-third thereof assessed upon property abutting on each side of the street within such district, and that the city shall pay one-third of such cost, "the abutting land on each side assuming the liability hereinbefore created," cannot be considered as limiting the liability of the property on each side of the street to one-sixth of the cost, the meaning plainly being that such liability of each abutting owner is one-third of such total cost.

4. Where a city charter prescribes special methods for contesting the validity and regularity of assessments for street improvements upon the land of each abutting owner, and provides for the payment of such assessments in annual installments, an injunction will not lie to prevent the collection of the assessment, for it is in the power of the owner to pay an installment and bring an action for its recovery.

MOTION in a civil action, pending in BUNCOMBE Superior Court, for an injunction to restrain the City of Asheville from collecting from the plaintiffs certain assessments upon them as owners of property abutting on Main street in Asheville, heard before *Robinson, J., at Chambers*, in Asheville, on the 31st day of August, 1895.

The charter sections relating to the improvement of streets are as follows :

"Sec. 5. To equalize the assessments on real estate for the purpose described in Section four, next above, the said mayor and board of aldermen shall assess a (the) total cost of such improvement made throughout the entire length of such work and improvement, and shall then *pro rate* the cost thereof on the real estate abutting thereon, according to the frontage on the street or portion of the street so improved, and charge to such real estate on each side of the street upon which such work is done its *pro rata* share of one-third the cost of such street improvement made under the provisions of this act: Provided, however, that, in order to avoid embarrassing land-owners in subdividing and selling their property by reason of the liens thereby created upon the same, they be subdivided in any manner as they see fit, and shall furnish the city engineer with a plot of the same, the lots fronting on the streets to be so paved and improved to be of any desired frontage, but not less than one hundred feet in depth, and the assessment made and lien created by virtue of this act for sidewalk or street improvement or both shall be made upon such front lots only, and where any such cases of frontage is (are) subdivided into lots, each of said lots shall be charged with its ratable proportion of said assessment and lien according to its frontage, and when the board of aldermen shall order paving or other improvements to any street they shall have the same accurately surveyed, and a

permanent grade thereof established, and accurate map made of the various lots and properties abutting upon said street, showing the exact frontage of each lot, and also of the subdivisions, if any, of the frontage of each; and the said map shall be filed, together with a tracing of the same, in the office of the clerk of the city, to be subject to public inspection. When the assessment and liens herein provided shall have been made upon the various lots and properties on the streets the said clerk shall write in ink upon said map the amount assessed upon the same, and he shall keep a record book showing such assessments and liens, and the date and amount of all payments made upon any of said assessments and liens.

"Sec. 6. The amount of assessment for such street's improvement, and for sidewalks exclusive of curbing and for roadways, as hereinbefore provided, on each piece of real estate, being estimated as above directed, shall be a lien on such real estate, and the said mayor and aldermen shall cause the city engineer to make a survey and a report of the amount of work done (and) the cost thereof, upon which street and sidewalk, the name of each abutting owner thereon, the number of feet on each lot, and the *pro rata* share of such cost of such street and sidewalk improvement to be assessed against such real estate; and upon the adoption of said report the said lien shall become complete and operative, which said report shall be transcribed upon the minutes of said board of aldermen, and the amount of said lien and of said assessment against all property abutting on said street as aforesaid shall become due as follows: One-sixth in six months and the balance in five equal-amount installments. The adoption of said report of said surveyor by such board of aldermen shall constitute the said lien for the amount therein stated against each of the separate pieces

of real estate therein described, and the same shall become due and payable as aforesaid; and in ·case of failure to pay either of the said assessments in thirty days after its maturity, then all shall become due at once and an execution shall issue by the clerk of said board of aldermen directly to the marshal of said city, who shall advertise the land upon which said defaulting assessments are made as aforesaid, or (as) required by law for sale of land for taxation under the provisions of the charter of said city, and shall sell the same and give to the purchaser a receipt stating the time the land was advertised, the day of sale, the purchaser, the price paid, the assessment due thereon, the cost of sale, the name of the owner of the land, and the description of the lands sold; and the owner of the ·land sold shall have twelve months within which to redeem said land by paying to the purchaser the amount he paid and twenty per centum additional; but if the land is bid off for the city or for said sinking fund, then the owner, in order to redeem the same, must pay the assessment due on said land, the cost of the sale and twenty per centum on said assessment; if the land is not redeemed within twelve months, then the marshal shall make to the purchaser a deed for said land, and the same shall operate to pay (convey) to the purchaser the title to said land, and the proceeds of said sale shall be applied, first, to the payment of all that then may remain unpaid upon said assessment and liens, together with the cost of such sale, which costs shall be the usual fees allowed the marshal for selling land for taxation and receive; the balance,·if any, of such proceeds shall be paid to the owner of said land at the time of said sale: Provided, however, that any owner of said land may have the privilege of paying off all of said assessment before due, and upon such payment the said lien shall be released and discharged *pro tanto*: Pro-

vided further, that any owner of land upon which said lien for such assessment exists shall have the right to file before the mayor and board of aldermen of said city (an) affidavit denying that the whole or any part of the amount, if any he admits to be due, which amount so admitted to be due he shall pay or tender, accompanying his affidavit with it and before it shall be received, and then the said affidavit shall be received only for the balance, and all such affidavits so received shall be returned to the superior court of Buncombe county for trial, and it shall be considered that the issue as to the amount then due is raised upon reception of each affidavit, and without any plea upon the part of the City of Asheville, but this shall not be construed to prevent the said City of Asheville from filing an answer or any other defense to which it may be entitled under the laws of North Carolina; and upon such trial, if the issues be all found in favor of the affiant, then the lien shall be discharged; if, however, the issues shall be found in favor of the City of Asheville to any amount, and if it be thereby ascertained that the affiant is due to said city any amount by virtue of the matters therein referred to, then the said amount so found, together with eight per centum (8 per centum) interest thereon from the date of its maturity, and together with the costs thereon accrued, which costs shall be assessed as costs in other civil actions, shall be and continue a lien against the property upon which the original assessment was placed, and shall be collected by an execution issuing from said superior court, directed to the marshal of said city, which shall be collected by him by the sale of said land as hereinbefore provided, in case of execution issuing from the clerk of said city.

" Sec. 7. The said mayor and the board of aldermen of said city, by its proper officers, shall have the exclusive

118—54

control and management of said work upon the sidewalks
and streets for all the work and improvements thereon
herein contemplated, and shall complete the same, and the
whole of the cost thereof shall be paid for out of the pro-
ceeds of the sale of the bonds hereinbefore in this act
authorized to be issued and sold, the said city itself being
liable for the costs of curbing, and for one-third (⅓) of the
street or roadway between the curbing, and the abutting
land on each side assuming the liability hereinbefore
created : Provided, however, that whatever of the cost of
street improvements which may be paid by or assessed
against any street railway hereinafter provided for shall
be deducted from the proportion of the costs thereof for
which the said city is liable as aforesaid : Provided, that in
case the said city may not have on hand at any time suffi-
cient funds arising from the sale of said bonds to meet the
amount then due for the work aforesaid, the mayor and
board of aldermen are directed hereby to advance the
same from the general revenues of said city, but such
amount so advanced shall be refunded out of the funds aris-
ing from said bonds as soon as it is realized."

Plaintiffs contended that the act under which defendant
was proceeding to collect from them special assessments
for street improvements was unconstitutional, because it
violates Const. N. C., Art VII, Sec. 9, requiring all taxes to
be uniform, in that the rule of uniformity is not observed,
the abutting land receives no benefit over and above that
of citizens generally, and because " there is a want of
power, and the method adopted for the assessments of the
benefits is so clearly inequitable as to offend some consti-
tutional principle," viz.: the principle " that no person can
be deprived of his property without just compensation and
due process of law." *Id.* art. I, Sec. 17 ; Const. U. S.,
Amend. 14, Sec 1 ; that it also violates Const. N. C., Art. 5,

Sec. 3, requiring a "uniform rule for taxing real estate, according to its true value in money;" that it also violates the Fourteenth Amendment to the Constitution of the United States, (Section 1), in that no remedy is provided for relief under the act, unless by admitting and tendering some part of the assessment claimed to be due.

His Honor granted the injunction and defendant appealed.

*Messrs. James H. Merrimon, Moore & Moore* and *John P. Arthur*, for plaintiffs.

*Messrs. Julius C. Martin* and *W. W. Jones*, for defendant (appellant).

CLARK, J.:   The principal points in this case are decided in *Raleigh* v. *Peace*, 110 N. C., 32, and adversely to the plaintiffs.   Indeed, Chapter 125, Acts 1891, (the charter of Asheville,) is less open to objection than the Act construed in *Raleigh* v. *Peace*.   It makes each street, or portion of a street, improved a taxing district (Cooley Const. Lim.,624, 6th Ed.) by requiring the cost of the total improvement on each street, or portion of a street improved, to be ascertained and one-third thereof assessed upon the property abutting on each side of the street, proportioned according to the "frontage" of each owner, and provides means whereby each property owner may contest his assessment by proceedings begun before the board of aldermen, with the right of appeal.   The act is uniform in the method of assessment.   The will of the Legislature is clearly expressed, and the courts have no power to interfere unless an act is plainly unconstitutional.   If the unconstitutionality of an act is not beyond reasonable doubt, the courts will uphold it.   *King* v. *Railroad*, 66 N. C., 297.   It is not a question in any wise of eminent domain, or taking private property for public use, (*White* v. *Bloomington*, 94

Ill., 604,) and there is due process of law as ample notice of the assessment, with opportunity to be heard, is given the property holder. *Davidson* v. *New Orleans,* 96 U. S., 97. While other modes of assessment are valid, that of assessing by the front foot is not only sustained by the numerous cases cited in *Raleigh* v. *Peace, supra,* and numerous other cases, among them *Chicago* v. *Joliet,* 39 N. E. Rep., 1077 ; *McKeesport* v. *Busch,* 33 N. E., Rep., 49, and cases cited in Cooley on Taxation, 644, but the " frontage " rule is essentially equitable. By that rule the owner of unimproved property, who has contributed nothing to the prosperity of the city, but who is benefited by all improvement, pays his just share towards the enhanced value of his property, whereas, under an assessment upon the basis of the value of each lot, the buildings, which have no value added to them by the improvements, contribute. The added value being to the land, the front foot rule, regardless whether the property is improved or unimproved, is ordinarily the most just. There may be cases in which the length of the taxing district and the diversity of values may make the assessment grossly lacking in uniformity. If that is so in this case, that objection can be raised in proceedings regularly brought under the Act of 1891, Ch. 135.

While a local assessment is not a tax within the purport of constitutional limitation upon taxation—*Raleigh* v. *Peace, supra*—yet as the plaintiffs might have made their annual payment (1–20) and have had their action at law to recover it back, they were not entitled to the equitable relief by injunction. There was no irreparable damages threatened, the cost being divided into 20 annual payments, with 12 month's right to redeem in event of a sale for nonpayment of an assessment. At any rate the act itself prescribed a special method (Sec. 6) by which the validity and

regularity of such assessments can be contested and the plaintiffs having that remedy, can not proceed by injunction. *McIntyre* v. *Railroad*, 67 N. C., 278. This remedy is also adequate as to the culvert and all other points of detail excepted to.

As to the point, which was much pressed, that the act contemplated charging the property on each side with only 1–6 of the cost of the improvement, it seems to us that it is clear beyond ambiguity that one-third of the cost is to be assessed on the real estate on each side of the street. The language of Sec. 4 provides that " the mayor and board of aldermen shall assess one-third of the cost of grading, paving, &c., on the real estate abutting on *each* side of the street so improved or repaired." Section 5 provides that the mayor and board of aldermen shall " charge to such real estate on each side of the street, upon which work is done, one-third of the cost of such improvement." If this could possibly, by any reasonable method of construction, be held to admit of a doubt that the property on each side of the street should pay one-third of the cost, and consequently that the property on the two sides should pay two-thirds of the cost, the matter is placed beyond controversy by the further provision in Section 7 that the city itself should pay one-third, " the abutting land on each side assuming the liability hereinbefore created," i. e. two-thirds. Thus the whole cost is provided for ; one-third by the city, and one-third by the property on each side of the street improved. The act being constitutional, whether any particular lot is over-assessed or improperly assessed is a matter which must be litigated in the manner and by the proceeding provided for that purpose by the act itself. Whether the plaintiffs or any of them are estopped by their conduct from insisting upon their objections to the assessment upon their property is a matter which will come up

in such proceeding, and need not be considered here. The injunction was improvidently granted and must be dissolved.

Error.

AVERY, J., did not sit upon the hearing of this case.