T. B. GUNTER ET AL. v. TOWN OF SANFORD ET AL.

(Filed 14 November, 1923.)

1. **Constitutional Law—Statutes—Courts.**

The court will not exercise its high prerogative power to declare a statute unconstitutional when by reasonable construction it will comply with the organic law, every presumption being in favor of its validity; and it will not be construed as repugnant unless its invalidity is "clear, complete and unmistakable," or shown beyond a reasonable doubt.

2. **Same—Due Process—Municipal Corporations—Cities and Towns—Street Improvements—Assessments—Taxation.**

For the purpose of an assessment by a municipal corporation of land abutting upon its improved streets, it is for the Legislature to determine whether the improvements are of benefit to the lands privately owned.

3. **Same.**

It is not necessarily required for the "due process" clauses of the constitutions (Federal Constitution, Art. XIV, sec. 1, State Constitution, Art. I, sec. 17) that the total cost of street improvements allowed by statute to be made by a city or town should be referred to a regularly constituted judicial tribunal, and a statutory provision making the determination thereof by the board of aldermen of the town final and conclusive, subject to impeachment only for fraud and collusion, upon due notice previously given the private owners of the land assessed, with the right of appeal, is a valid and constitutional grant of such authority. *Semble,* the right of appeal is not always essential to the "due process" clauses of the State or Federal constitutions.

4. **Same—Notice—Appeal and Error.**

Where the statute authorizes the board of aldermen of a town to assess the adjoining lands on a street improved, and provides that due notice be given such owners to appear before the board and urge their objections to the proposed assessment, with right of appeal to the Superior Court, and thence to the Supreme Court, it is sufficient notice to such landowners under the "due process" clauses of the State and Federal constitutions.

5. **Constitutional Law—Municipal Corporations—Cities and Towns—Government—Taxation—Discretion—Eminent Domain.**

The statutory power conferred on the board of aldermen of a town to assess lands of owners abutting on a street improved is usually referred to the right of taxation, and not to that of eminent domain.

6. **Same—State Highways.**

The private owners of land abutting on an improved street of a town, which is assessed therefor, cannot successfully contend that money furnished by the State Highway Commission for a State highway running through the town should be for their sole benefit, and was unlawfully to be applied for the benefit of all of the taxpayers of the town.

**7. Government—Municipal Corporations—Cities and Towns—Streets—
State Highways—Agencies.**

When a new governmental agency is established by statute, it takes
control of the territory and affairs over which it is given authority as
a governmental agency of the State to the exclusion of other govern-
mental instrumentalities, and when the board of aldermen of a town,
in the exercise of its statutory power, assesses the owners of land adjoin-
ing a street improved, the fact that a State highway extends through
the corporate limits does not deprive the municipality of its exclusive
control over its streets, or relieve it of its duty of improving and keep-
ing them in repair.

THE DEFENDANTS appealed from the order of *Horton, J.,* at chambers,
LEE County, June 14, 1923, continuing an injunction until the final
hearing.

In 1915 the General Assembly passed an act to amend, revise, and
consolidate the charter of the town of Sanford, and this act was amended
at the Regular Session of 1921 and again at the Extra Session of the
same year.   Private Laws 1915, ch. 380; Private Laws 1921, ch. 69;
Private Laws, Extra Session 1921, ch. 15.

Under the act last cited the board of aldermen proceeded to improve
and pave the streets and sidewalks of the town of Sanford, and pre-
pared assessments against the property of various abutting owners, and
caused to be served on the plaintiffs a notice to show cause why the
assessments should not be made final; and the plaintiffs thereupon ob-
tained a restraining order which his Honor continued until the final
hearing of the cause, with leave to the defendants to assess the cost of
the improvements and to apportion the same.   Meanwhile the rights
of the plaintiffs were preserved by a provision that the assessments
should not be enforced until the final determination of the cause.

The following are the material sections of the act:

Section 1 authorizes the board of aldermen to pave the streets and
sidewalks and to make other permanent improvements; to assess and
to equalize the assessments of all costs and charges of such improve-
ments; to provide for assessing the entire cost of paving, curbing, re-
paving, draining, etc.; and apportions the costs of the improvements
made—one-third against the property abutting on each side of the
street and one-third against the municipality.

Section 2 authorizes the board of aldermen before beginning the work
to estimate the total cost of the improvement in each district and to
apportion the cost on the abutting property.

Section 3 makes the assessments of the estimated costs a lien on the
abutting property.

Section 4. That immediately upon the completion of the work in any
district created, or section laid out, for permanent street improvement

by said board of aldermen, as herein provided, the town engineer, or other person or committee of the board of aldermen, in charge of such work, shall make a report in writing to said board of aldermen showing the total actual cost of such improvement throughout the entire length of said district, or section, created or laid out, with the number and description of the lots abutting on said streets or portion thereof so improved, together with the number of feet frontage of each of said lots and the owners thereof, and said board of aldermen shall ascertain, determine, and declare the actual cost of such permanent improvements in such district or section, and in order to equalize the assessments on real estate for the purpose of paying therefor, shall take the total cost of such improvement throughout the entire district or section, and shall then prorate the cost thereof and assess the same against the real estate abutting on the street therein, in proportion to the frontage on the street, or portion thereof, so improved, and charge to and assess against the real estate and each lot upon each side of the street upon which said work is done its pro rata share of the cost of such improvement: *Provided, however,* that the total cost of such street improvement in such district or section, as determined and declared by said board of aldermen, shall be final and conclusive, subject only to impeachment for fraud or collusion, with the right of appeal as herein provided. And the charge or assessment made against the abutting property, under the estimated cost of such street improvement work as herein provided, shall be corrected by the addition of the difference between it and the actual cost thereof, or the deduction of such difference, accordingly as the estimated cost thereof may be less or greater than such ascertained actual cost, and as thus corrected shall constitute a lien upon abutting property as herein provided.

Section 5. That the board of aldermen shall cause a written notice to be served on all owners of abutting property affected by improvements, as provided by this act, at least ten days before the final assessments provided for in this act are made, which notice shall command the property owner to appear before the board of aldermen at a time and place stated therein and show cause, if any, why such assessment should not be made, which notice may be served by any policeman or constable of the town of Sanford, or other proper officer, and proved by the return of such officer thereon endorsed. In the event the owner or owners of any such lot or lots herein referred to be an infant, idiot, lunatic or incompetent, then his general guardian, if he has such, shall act for him; if he has none, it shall be the duty of the clerk of the Superior Court of Lee County, North Carolina, to appoint a guardian *ad litem* to act for him. Any person who shall feel aggrieved by the findings or assessments of said board of aldermen with reference to

such permanent improvements shall have the right, within ten days after the findings and assessments by said board of aldermen have been filed with the clerk of the town of Sanford, and not thereafter, to file with said clerk his objections to such findings, and appeal from the decision of said board to the next term of the Superior Court.

Section 6 provides that as soon as the amount assessed against the abutting property is determined in the estimated costs, notice thereof shall be published once a week for two weeks in a newspaper, etc.

Section 15. That the costs of installation of storm sewer, proper drainage facilities, and curbing, in any such district shall constitute a portion of the costs of such street improvement to be assessed under the provisions of this act.

Section 16. That any benefits accruing from the location or construction of the State highways, or from the disbursements of funds therefor by the State Highway Commission, within the corporate limits of the town of Sanford, shall be paid and inure to the benefit of said town of Sanford, and be applied to its portion of cost of any street improvement made hereunder.

Section 20 provides that the powers enumerated in the several acts shall be concurrent with those of the Municipal Finance Act.

From the order continuing the injunction the defendants appealed.

*Gavin & Jackson, Hoyle & Hoyle, Seawell & Pittman, and Teague & Teague for the plaintiffs.*
*Williams & Williams for the defendants.*

ADAMS, J. The plaintiffs contest the validity of the acts purporting to authorize the assessments complained of, assigning for their objection several grounds which require examination.

They contend particularly that the act of 1921, Extra Session, is unenforceable because obnoxious to the due process clause of the State and Federal constitutions.

The right of the courts to declare a statute unconstitutional is regarded as a high prerogative which should be exercised with caution and careful attention to probable results. The Legislature is presumed to have observed the limitation of its powers; and if a statute is reasonably open to more than one construction, all doubts will be resolved in favor of sustaining it and reconciling its terms with the fundamental law. Hence a legislative enactment will not be construed as repugnant to the Constitution unless its invalidity is "clear, complete, and unmistakable," or shown beyond a reasonable doubt. *King v. R. R.,* 66 N. C., 277; *Hilliard v. Asheville,* 118 N. C., 845; *Coble v. Comrs.,* 184 N. C., 342.

The Federal Constitution (Art. XIV, sec. 1) provides: "No State shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws"; and the State Constitution (Art. I, sec. 17), "No person ought to be deprived of his life, liberty, or property but by the law of the land."

It is not inaccurate to say that the courts have not attempted to define with exactness and precision the term "due process of law," but the words are generally understood to refer to the law of the land, and, as expressed by *Mr. Justice Johnson,* to be "intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice." *Bank of Columbia v. O'Kelly,* 4 Wheat. (U. S.), 235; 4 Law Ed., 561. See, also, *Twining v. New Jersey,* 211 U. S., 101; 53 Law Ed., 107; *Caldwell v. Wilson,* 121 N. C., 425; *Parish v. Cedar Co.,* 133 N. C., 484, which is not affected on this point by *Board of Education v. Remick,* 160 N. C., 568. Recognizing both the risk of a failure to give a definition which would be at once perspicuous, comprehensive and satisfactory and the wisdom of ascertaining the intent of the phrase by the gradual process of judicial inclusion and exclusion, *Mr. Justice Miller* said: "Whenever by the laws of a State, or by State authority, a tax, assessment, servitude, or other burden is imposed upon property for the public use, whether it be of the whole State or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections." *Davidson v. Board of Admrs. of New Orleans,* 96 U. S., 97; 24 Law Ed., 616.

No question is raised as to the power of the Legislature to provide for the improvement of the streets of a municipal corporation or for an assessment against the abutting property benefited by such improvement; and such power, it has been held, is usually referred not to the right of eminent domain, but to the right of taxation. The subject is discussed in *Bauman v. Ross,* 167 U. S., 548, 42 Law Ed., 270, in which *Mr. Justice Gray* said: "The Legislature, in the exercise of the right of taxation, has the authority to direct the whole, or such part as it may prescribe, of the expense of a public improvement, such as the establishing, the widening, the grading, or the repair of a street, to be assessed upon the owners of lands to be benefited thereby," citing *Davidson v. New Orleans, supra; Hagar v. Reclamation Dist.,* 111 U. S.,

701; 28 Law Ed., 569; *Spencer v. Merchant,* 125 U. S., 345; 31 Law Ed., 763; *Walston v. Nevin,* 128 U. S., 578; 32 Law Ed., 544; *Lent v. Tillson,* 140 U. S., 316; 35 Law Ed., 419; *Illinois C. R. R. Co. v. Decatur,* 147 U. S., 190; 37 Law Ed., 132; *Paulsen v. Portland,* 149 U. S., 30; 37 Law Ed., 637. See, also, *Raleigh v. Peace,* 110 N. C., 32; *Hilliard v. Asheville, supra; Asheville v. Trust Co.,* 143 N. C., 360; *Kinston v. Loftin,* 149 N. C., 255; *Kinston v. Wooten,* 150 N. C., 296; *Tarboro v. Staton,* 156 N. C., 504; *Durham v. Public Service Co.,* 182 N. C., 333; *Kinston v. R. R.,* 183 N. C., 14.

It is also established that the Legislature has the power to determine by the statute imposing the tax what property is benefited by the improvements; and when it does so its determination is conclusive upon the owners and the courts, and the owners have no right to be heard upon the question whether their lands are benefited or not, but only upon the validity of the assessment and its proper apportionment. *Spencer v. Merchant, supra.* Our own decisions are in accord with this principle. In *Tarboro v. Staton, supra, Mr. Justice Hoke* quotes with approval the following excerpt from *Atlanta v. Hamelin,* 196 Ga., 383: "As to whether he (the owner) was benefited or not is a question which should address itself to the discretion of the municipal authorities. Their judgment upon this subject is ordinarily, except in the most extreme cases, conclusive; but, as we have before stated, it is not allowable that the municipal authorities, under the guise of a public improvement, should arbitrarily deprive the citizen of his estate. If, therefore, in the levy of such assessments the cost of the improvement be so disproportioned to the value of the estate sought to be improved as that the levy of the assessment amounts to a virtual confiscation of the lot-owner's property, such assessment cannot be upheld as a legal or valid exercise of the power to tax such improvements." And in *Kinston v. R. R., supra,* it is said: "The legislative declaration on the subject is conclusive as to necessity and benefit of the proposed improvements, and in applying the principle and estimating the amount as against the owners, individual or corporate, the court may interfere only in case of palpable and gross abuse."

The plaintiffs, however, earnestly contest the validity of the first proviso in the fourth section of the act. The proviso is this: the total cost of the street improvement in each district or section of the town as determined and declared by the board of aldermen shall be final and conclusive, subject to impeachment only for fraud or collusion, with the right of appeal.

With respect to this provision, the plaintiffs present the question whether the right of appeal is essential to due process of law. The question has frequently been considered by the courts and answered

in the negative. In *Reets v. Michigan,* 188 U. S., 503; 47 Law Ed., 563, it was objected that a board of registration was given authority to exercise judicial powers without any appeal from its decision, and thereby to determine a legal question which no tribunal other than a regularly organized court could be empowered to decide, and it was held that the Federal Constitution does not forbid a State from granting to a tribunal, whether called a court or a board, the final determination of a legal question. Due process of law, it was said, is not necessarily judicial process, and to due process the right of appeal is not essential.

In *Spring Valley Waterworks v. Scottler,* 110 U. S., 347; 28 Law Ed., 173; 4 Sup. Ct. Rep., 48, where the law provided for the fixing of water rates by a board of supervisors after a hearing, and without any right of review by any court, it was stated (at page 354, L. Ed., 176 Sup. Ct. Rep., 51) by *Mr. Chief Justice Waite,* giving the opinion of the Court: "Like every other tribunal established by the Legislature for such a purpose, their duties are judicial in their nature, and they are bound in morals and in law to exercise an honest judgment as to all matters submitted for their official determination. It is not to be presumed that they will act otherwise than according to this rule." See *Spencer v. Merchant,* 125 U. S., 345; 31 L. Ed., 763; 8 Sup. Ct. Rep., 921.

In *Crane v. Hahlo,* 258 U. S., 142; 66 Law Ed., 514, the remedy of a dissatisfied abutting owner was reduced from a general review in a court of general jurisdiction to questions of jurisdiction, fraud, and wilful misconduct. Discussing the effect of the amendment, *Mr. Justice Clark* reached this conclusion: "The amendment of 1918, following an earlier amendment in 1901, gave to the plaintiff in error the right to have the award of the board of assessors reviewed by the board of review of assessments, which her intestate did not have when the viaduct was constructed; and while the amendment of 1918 made the finding of the latter conclusive as to the 'amount of damages sustained,' it retained the right to review in the courts the entire finding whenever lack of jurisdiction, or fraud, or wilful misconduct on the part of the members of the board should be asserted. This afforded ample protection for the fundamental rights of the plaintiff in error, and the taking away of the right to have examined mere claims of honest error in the conduct of the proceeding by the board did not invade any Federal constitutional right."

From the act of 1921 (Private Laws, Extra Session, ch. 15), in which the method of determining the final assessment is set out, it appears that every abutting owner shall be given an opportunity to be heard and, if aggrieved by the findings or assessments of the board of alder-

men with reference to the permanent improvements, to file his objections thereto with the clerk and to appeal from the decision of the board to the Superior Court in term, with right to file pleadings and have the issues tried and determined. The finding as to benefits is conclusive; the finding as to the total cost of the improvement is conclusive except in case of fraud or collusion. The determination of the total cost is only one step in the process of improvement and, however important, may under the authorities cited be committed to the board of aldermen, subject to impeachment only for the causes stated, especially in view of the right to contest other questions and to have them finally decided on appeal.

The sufficiency of the notice prescribed in the act is sustained by a number of decisions. "It is settled that if provision is made for notice to and hearing of each proprietor at some stage of the proceedings upon the question what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law." *McMillen v. Anderson,* 95 U. S., 37; 24 Law Ed., 336; *Davidson v. New Orleans, supra; Hagar v. Reclamation District, supra; Spencer v. Merchant, supra; Paulsen v. Portland, supra; Kinston v. Loftin, supra; Kinston v. Wooten, supra; Tarboro v. Staton, supra.*

The act referred to (Private Laws, Extra Session 1921, ch. 15) went into effect 14 December, 1921. On 2 September, 1922, the State Highway Commission and the town of Sanford entered into a contract in which the town agreed to pay the Atlantic Bitulithic Company the cost of constructing a portion of the State highway within the corporate limits of the town along Carthage Street and Hawkins Avenue, and the Highway Commission agreed to advance or pay to and reimburse the town. On the same day a supplemental contract was made by the town and the Atlantic Bitulithic Company in which the town agreed to pay the Atlantic Company the cost of such construction. Upon completion of the work the town paid the Atlantic Company for all the paving and other improvements done on the streets referred to, and the Highway Commission paid the town for that portion of the work for which it had promised reimbursement, and this amount was received by the town and applied as provided in section sixteen of the act.

The plaintiffs assail this section as an unlawful device by which some of the owners of land abutting the State highway are assessed with costs paid by the Highway Commission and by which the funds of the commission are wrongfully diverted and committed to the discretion of the board of aldermen. This position, we think, cannot be maintained.

When a new governmental instrumentality is established, such as a municipal corporation, it takes control of the territory and affairs over

which it is given authority to the exclusion of other local governmental instrumentalities. The fact that a highway extends through the corporate limits of a town or city does not deprive the municipality of its exclusive control over the streets or relieve it of the duty of improving and keeping them in repair. "The object of incorporating a town or city is to invest the inhabitants of the locality with the government of all matters that are of special municipal concern, and certainly the streets are as much of special and local concern as anything connected with a town or city can well be. It ought, therefore, to be presumed that they pass under the exclusive control of the municipality as soon as it comes into existence under the law." 1 Elliott on Roads and Streets, sec. 505; 2 Cooley on Taxation, 1251.

As we have heretofore indicated, the statutes prescribing the method of improving the streets of the town and regulating assessments against property are referred to the right of taxation, and the exercise of such right is not judicial but entirely legislative. The legislative authority is vested in the General Assembly (Const., Art. II, sec. 1), and counties and municipal corporations, as was said in *Jones v. Comrs.,* 137 N. C., 579, are regarded merely as "agencies of the State for the convenience of local administration in certain portions of the State's territory, and in the exercise of ordinary governmental functions they are subject to almost unlimited legislative control, except when restricted by constitutional provision"—a principle which has been consistently maintained in the decisions of this Court. *Mills v. Williams,* 33 N. C., 558; *Manly v. Raleigh,* 57 N. C., 370; *McCormac v. Comrs.,* 90 N. C., 441; *Tate v. Comrs.,* 122 N. C., 812; *Jones v. Comrs.,* 143 N. C., 60; *Lutterloh v. Fayetteville,* 149 N. C., 65; *Trustees v. Webb,* 155 N. C., 379. The disposition of the fund as provided in the sixteenth section seems to be equitable. If it be objected that owners of property abutting that part of the street to which the contract of the Highway Commission relates pay their portion of the tax to maintain the State highway in addition to the assessment against their property, it may be said with equal plausibility that the policy advocated by the plaintiffs would apply that portion of the State tax paid by nonabutting owners in exoneration *pro tanto* of the abutting property. If all contribute to the State tax, why should not the fund reimbursing the town be applied for the benefit of all? We find nothing in the Constitution which forbids the Legislature to say for what purposes the money paid the town by the Highway Commission shall be disbursed.

What has been said applies also to the plaintiffs' contention as to the storm sewer, for, as suggested heretofore, the finding by the board that a particular district is benefited is not subject to review in the absence of gross abuse of the privilege. The questions discussed in this connec-

tion are addressed to the legislative discretion and are disposed of by the provisions of section fifteen.

In our opinion the statutes in question do not offend against the State Constitution or the due process clause of the Federal Constitution. On the other hand they afford the plaintiffs adequate means for litigating the matters in controversy before the board of aldermen, and if desired, by appeal from their decision to the Superior Court. We therefore hold that the statutory requirements should be observed and the injunction dissolved. His Honor's judgment continuing the injunction to the final hearing is accordingly reversed. Let this be certified to the end that further proceedings be had according to law.

Reversed.