D. M. CARPENTER ET AL. v. TOWN OF MAIDEN AND P. L. KEENER,
TAX COLLECTOR.

(Filed 25 January, 1933.)

1. **Municipal Corporations G c—Abutting owners held liable for entire cost of improvements under the terms of their petition.**

   Where the owners of land abutting upon a certain street in an incorporated town petition the town to improve the street under the provisions of C. S., 2710(1), and set forth in the petition that the owners on each side of the street be assessed one-half of the cost of the improvements, and the assessment roll is accordingly made up and the full amount of the cost of the improvements assessed against the abutting owners, one-half upon the lots on each side of the street in accordance with the front footage, and no objection is made thereto by the abutting owners after notice until the town threatens sale of the lots for the assessment liens: *Held*, under the terms of the petition, recognized and acquiesced in by the parties, the abutting owners were liable for the full amount of the cost of the improvements and they cannot successfully claim that the town was liable for a proportionate part of the cost.

2. **Contracts B a—Construction given contract by the parties will ordinarily be followed by the courts.**

   The terms of a petition of owners of abutting lands for the improvement by the town of its street, C. S., 2710(1), is, when favorably acted upon, in the nature of a contract, and the interpretation placed on the petition by the parties before disagreement thereunder, as evidenced by their acts and conduct, will ordinarily be followed by the courts.

APPEAL by plaintiffs from *McElroy, J.,* at April Term, 1932, of CATAWBA. Affirmed.

The material facts for the decision of this controversy are the following:

It was admitted upon the hearing, both by counsel for the plaintiffs and counsel for the defendants, that the town of Maiden is a municipality with such powers as are set forth in the pleadings, that the petition for certain improvements in the town prepared and signed, as shown by the record of this petition, was filed with the board of aldermen, or town commissioners; that, during the years 1922 and 1923, the permanent improvements along said Main Street in Maiden were made, as alleged and set out in the pleadings; that subsequently, the municipal authorities sent out statements to the property owners along Main Street, including among others, the plaintiffs in this action, calling upon them for the payment of the entire cost of the street improvements made by the municipal authorities, exclusive of those at street intersections, which payments have not been made by the plaintiffs, and that the

only question presented to the court in order to pass upon the motion of the plaintiffs for a continuance of the restraining order was whether or not the liability of the property of the respective plaintiffs was for the payment of one-half of the total cost (less the street intersections), of the improvements made by the town—the other half thereof to be paid by the municipality at large, or the liability of the plaintiffs' property was for the entire cost of such improvements prorated upon a front foot basis against the property of the plaintiffs and others abutting upon said street.

After hearing the argument and considering the questions involved, the court reached and announced the conclusion as follows: "That, upon the face of the petition and the proper legal consideration thereof, in the opinion of the court, the municipal authorities of the town of Maiden had the right to assess the entire cost of the street improvements referred to hereinbefore against the abutting property on either side of that part of Main Street, which was improved."

Plaintiffs excepted and assigned error to the conclusion of law made by the court below.

The court below signed order or judgment dissolving the restraining order theretofore granted. The plaintiffs assigned error to the order or judgment as signed and appealed to the Supreme Court.

*E. B. Cline for plaintiffs.*
*L. F. Klutz for defendants.*

CLARKSON, J. There are other questions presented on this appeal but to determine the controversy one question only is sufficient to be considered: Was the court below correct in holding that the defendant, town of Maiden, had, under the petition filed with the town commissioners in this case, the right to assess against the abutting properties the *entire* cost of the work (exclusive of cost of intersections, etc., set forth in C. S., 2710(1) done by the municipality instead of one-half thereof? We think so.

C. S., 2710(1), is as follows: "One-half of the total cost of a street or sidewalk improvement made by a municipality, exclusive of so much of the cost as is incurred at street intersections and the share of railroads or street railways, shall be specially assessed upon the lots and parcels of land abutting directly on the improvements, according to the extent of their respective frontage thereon by an equal rate per foot of such frontage, unless the petition for such street or sidewalk improvement shall request that a larger proportion of such cost, specified in the petition, be so assessed, in which case such larger proportion shall be so assessed, and the remainder of such cost shall be borne by the munici-

pality at large; but no assessment for street and sidewalks shall be made against abutting property on any such street or sidewalk until said street or sidewalk has been definitely laid out and the boundaries of the same definitely fixed." Laws, 1915, chap. 56, sec. 8; 1919, chap. 86.

The part of the petition signed by plaintiffs germane is as follows: "The undersigned petitioners respectfully request that one-half of the total cost of the street improvements, exclusive of that at street intersections and exclusive of that borne by the State Highway Commission be especially assessed against the abutting property on each side of the streets to be improved."

The language of the statute and petition is clear that one-half of the total cost of the street improvements (exclusive of that at street intersections and exclusive of that borne by the State Highway Commission) be especially assessed against the abutting property on each side of the streets to be improved.

In *Mount Olive v. R. R.,* 188 N. C., at p. 334, the statute has been construed: "The above section is taken from Laws, 1915, chap. 56, sec. 8, with the exception that the Consolidated Statutes has added 'one-half on abutting property,' and the latter part of the section commencing with 'but no,' etc. (Laws, 1919, chap. 86.) The clear interpretation of the act, we think, means what its language says—that one-half of the total cost of the street improvements shall be assessed upon the parcel of land abutting directly on the improvement, according to the extent of the respective frontage thereon. Section 2703 defines what 'frontage' means: 'Frontage, when used in reference to a lot or parcel of land abutting directly on a local improvement, means that side or limit of the lot or parcel of land which abuts directly on the improvement.' "

The petition goes even further than the statute "on each side of the streets to be improved." *Hilliard v. Asheville,* 118 N. C., 845; *Morris v. Hendersonville,* 168 N. C., 401; *Felmet v. Canton,* 177 N. C., 52; *McClester v. China Grove,* 196 N. C., 301.

The record discloses that the plaintiffs recognized the above construction of the statute and petition. Affidavits from two parties undenied by plaintiff D. M. Carpenter, is as follows: "About four years ago we heard D. M. Carpenter, one of the above plaintiffs, say that we will have to raise the money some way to pay same. He did not make any protest regarding the amount of street assessment, or raise any objection to the assessment in any way; he did not question the amount of any statement that had been mailed to him or to any one else concerning the street improvements. We never heard of his raising any objections to the amount of street assessments charged to the different owners until about the time the town officials had advertised that if the assessments were

not paid they were going to advertise the property along said street. This was the first time we heard any objection from him or any of the other plaintiffs, or for that matter, from anybody."

Affidavit of one party: "D. M. Carpenter made payments on street assessment in front of the Reformed Church without any protest."

Another affidavit by the mayor of the town of Maiden undenied: "The remaining five plaintiffs made payments on their improvements involved in the above entitled proceedings as follows (setting same forth). That said payments were made without protest and with no objections whatever to the amount assessed and this long after they had each received notices telling them the amount of their street assessments and too, long after they had been notified to appear and make any objections or exceptions that they might want to make to the assessment roll. No protest or objection of any kind was made by either of these plaintiffs or by anyone else for about eight years after the assessment roll was duly adopted by the board of aldermen according to law and after due advertisement and due notice given in accordance with law."

In *Cole v. Fibre Co.,* 200 N. C., at p. 487, citing numerous authorities the following sound principle is laid down: "The general rule is, that where, from the language employed in a contract, a question of doubtful meaning arises, and it appears that the parties themselves have interpreted their contract, practically or otherwise, the courts will ordinarily follow such interpretation, for it is to be presumed that the parties to a contract know best what was meant by its terms, and are least liable to be mistaken as to its purpose and intent. . . . 'Parties are far less liable to have been mistaken as to the meaning of their contract during the period while harmonious and practical construction reflects that intention, than they are when subsequent differences have impelled them to resort to law, and one of them then seeks a construction at variance with the practical construction they have placed upon it of what was intended by its provisions.' " 6 R. C. L., 853. This principle is also set forth *In re Assessment against R. R.,* 196 N. C., 756.

We cannot follow the contention of the plaintiffs' attorney in this case, long a Superior Court judge and an ornament to the bench, but his philosophy of government set forth in his brief is worth preserving: "All our lawbooks teach us that municipal corporations are created for the purpose of exercising a variety of political rights, according to the design of its institution or the powers conferred upon it; created at the request or with the consent of their members, and for the promotion of their convenience and welfare. One says that 'a city governed by an aristocracy, whether of birth or wealth, though it may be splendidly adorned with all that wealth and taste can afford, will still lack the

virility and independence that can only be secured by the active interest of the governed in the government. It will contain the seeds of decay, that will ultimately cause the decadence of civic spirit and the consequent degradation of its citizens.' " May we add that a city governed by men who have aristocracy of character is the goal. For the reasons given the judgment of the court below is

Affirmed.