CITY OF GOLDSBORO v. ATLANTIC COAST LINE RAILROAD COMPANY
AND GOLDSBORO UNION STATION COMPANY.

(Filed 15 December, 1954.)

**1. Statutes § 2—**

Where a local statute (Chapter 397, Private Laws of 1901) giving a
municipality power to improve its streets and assess abutting owners for
a part of the cost, is enacted prior to the effective date of the amendment
of the State Constitution, Art. II, Section 29, a subsequent local law which
merely increases the jurisdiction and authority granted to the city in
regard to such improvements (Chapter 215, Private Laws of 1925) does
not violate the constitutional proscription.

**2. Municipal Corporations § 30—**

Chapter 222, Public Laws of 1931, was intended to be merged into the
framework of the Local Improvement Act of 1915, Chapter 56.　G.S.
160-79; G.S. 160-104.

**3. Same—**

Chapter 222, Public Laws of 1931, does not repeal the provisions of
Chapter 397, Private Laws of 1901, or Chapter 215, Private Laws of 1925,
relating to paving of streets, but the local acts will be construed as excep-
tions to the general statute.

**4. Statutes § 12—**

Ordinarily, a local statute is not repealed by a subsequent general statute
upon the subject.

**5. Municipal Corporations § 30—**

Where municipal streets cross or run contiguous with the edge of a
railroad right of way, the lands of the railroad abut the streets for the
purpose of levying assessments for the improvement of the streets.

**6. Same—**

Legislative determination that property abutting municipal streets, in-
cluding the rights of way of railroad companies, is benefited by improve-
ment of the streets is conclusive upon the owners and the courts, and the
railroad company will not be heard to contest the validity of the assess-
ments on the ground that the railroad lands are not benefited by the im-
provements.

APPEAL by defendants from *Parker (Joseph W.), J.,* at April Civil
Term, 1954, of WAYNE.

Proceeding before the Board of Aldermen of the city of Goldsboro by
which street paving assessments were levied by the Board acting in full
compliance with the machinery and powers provided in Chap. 397 of the
Private Acts of 1901 and in Chap. 215 of the Private Acts of 1925 on
streets which:

(a) Cross at right angles the right of way conveyed to the defendants;

(b) Cross the tracks of the defendants and are contiguous with the right of way conveyed to the defendants;

(c) Parallel and are contiguous with the right of way owned by defendant Atlantic Coast Line Railroad Company, and abut the boundaries of the tract of land owned by the Goldsboro Union Station Company.

Protests filed by defendants with the Board of Aldermen of the city of Goldsboro were overruled, and the assessments were adopted by the Board. Defendants appealed therefrom to Superior Court, to which the case was submitted and heard upon an agreed statement of facts.

The agreed facts are substantially these:

1. The city of Goldsboro is a municipal corporation organized and existing under the laws of the State of North Carolina.

2. The Atlantic Coast Line Railroad Company is a corporation legally created and organized under the laws of the State of Virginia, duly and legally authorized to engage in business in the State of North Carolina, and on the dates and at the times mentioned in the statement of facts was and is engaged in business in said State,—maintaining and operating a railway system in and through the State, and elsewhere in the United States,—a portion of its track and railway system lying in the city of Goldsboro, Wayne County, North Carolina.

3. The Goldsboro Union Station Company is a corporation legally created and organized under the laws of the State of North Carolina, and maintains and operates a railway depot, baggage and express terminal, railroad sidetracks and loading tracks in the city of Goldsboro, Wayne County, North Carolina.

4. The Atlantic Coast Line Railroad Company, by warranty deed dated 9 March, 1907, and duly recorded, obtained from F. K. Borden *et al.* a certain tract of land, situate in the city of Goldsboro, Wayne County, North Carolina, owned and utilized by it for a portion of its track and right of way through the city,—which tract of land is a strip 130 feet wide—65 feet on each side of the center line of said track, and adjoins the northern edge of Pine Street on its southern boundary and extends northwardly a distance of 4,177 feet.

5. The Goldsboro Union Station Company, by deed dated 1 July, 1908, and recorded in office of register of deeds for Wayne County, obtained from Atlantic Land and Improvement Company, a certain tract of land situate in the city of Goldsboro, Wayne County, North Carolina, owned and utilized by it for its railroad depot, baggage and express terminal, railroad sidetracks and loading tracks, plat of which is recorded in Book 96 at page 85 in the office of said register of deeds. (It being agreed that any one of the parties hereto may attach to the agreed statement of facts

and present to the court copies of any deeds, leases or maps pertinent to the lands, streets and crossings involved in this action.)

6. "The city street designated as Pine Street" crosses the tracks of Atlantic Coast Line Railroad Company from east to west,—the northern edge of the street being contiguous with the southern boundary of F. K. Borden tract of land, hereinabove described, and the southern edge being contiguous with the right of way owned in fee simple by the Railroad Company under other conveyances; and the northern edge of said Pine Street is contiguous with a part of the southern boundary of the tract of land conveyed to the Goldsboro Union Station Company by deed from Atlantic Land and Improvement Company as hereinabove set forth.

7. "The city streets designated as Chestnut and Mulberry Streets" cross (1) at right angles the right of way of the Atlantic Coast Line Railroad Company conveyed to it by F. K. Borden, *et al.*, as hereinabove set forth, and (2) the tracks of the company, from east to west. And certain part of northern edge of Chestnut.Street is contiguous with southern boundary of the tract of land owned by the Goldsboro Union Station Company, and crosses the sidetracks and loading tracks of the company. And Mulberry Street grade crossing was constructed on or about the year 1909, the costs of which were paid by the Union Station Company and the Railroad Company. And about the year 1909 a grade crossing on Walnut Street extended was closed and Walnut Street was closed at the western edge of its intersection with Carolina Street. And on or about the year 1912 the grade crossing at Chestnut Street was constructed,—the costs of which were paid by the Union Station Company and the Railroad Company. And the crossings and area in question were outside the city limits of the city of Goldsboro until the extension of the city limits in year 1909. And the grade crossings at Mulberry Street and Chestnut Street have been used by the public since they were constructed during the years above set forth.

8. "The city street designated as Elm Street" crosses the tracks of the Atlantic Coast Line Railroad Company from east to west and both the northern and southern edges of the street are contiguous with the right of way owned by the Railroad Company under valid conveyances.

9. "The city street designated as Georgia Street" parallels with the right of way and the F. K. Borden tract of land, hereinabove described, and the eastern edge of said street parallels the tracks of the Railroad Company and contiguous with the western edge of the right of way of the Railroad Company between Ash and Pine Streets.

10. The Board of Aldermen of the city of Goldsboro, acting under the provisions of Chap. 397 of the Private Acts of 1901, and Chap. 215 of the Private Acts of 1925, adopted a paving program for the city on 7 August, 1950, in which program these streets were to be, and were

paved, to wit: (1) Pine Street, from Virginia Street to Griffin Street; (2) Georgia Avenue, from Ash Street to Pine Street; (3) Chestnut Street, from Carolina Street to Georgia Avenue; (4) Elm Street, from George Street to Griffin Street; and (5) Mulberry Street, from A.C.L. R.R. Company track to Georgia Avenue.

11. In full compliance with the machinery and powers provided in the two acts referred to in preceding paragraph of the Board of Aldermen adopted assessment rolls for the completed paving program:

I. In which assessment rolls the Atlantic Coast Line Railroad Company was assessed: (1) For streets crossing at right angles the right of way owned by it certain amounts on north and south sides of Chestnut Street, and of Mulberry Street; (2) For streets crossing the tracks of the Railroad Company, and contiguous with the right of way owned in fee by it, certain amounts on north and south sides of Pine Street, and of Elm Street; (3) For streets paralleling and contiguous to the right of way owned by the Railroad Company certain amounts on Georgia Avenue (a) from Ash Street to Mulberry Street, and (b) from Mulberry Street to Walnut Street, and (c) from Chestnut Street to Pine Street.

II. In which assessment rolls the Goldsboro Union Station Company was assessed: (1) For streets situate across the land and tracks of said company on north and south sides of Chestnut Street; (2) For streets contiguous with the boundaries of the tract of land owned by the company (a) on north side of Chestnut Street, and (b) on north side of Pine Street.

12. Protests of the Atlantic Coast Line Railroad Company and the Goldsboro Union Station Company to each of the assessments hereinabove set forth were duly filed with and presented to the Board of Aldermen of the city of Goldsboro at its meeting held for that purpose on 19 May, 1952, and on 2 June, 1952. From the ruling of the Board in overruling said protests, and in adopting said assessment rolls, the Railroad Company and the Union Station Company gave notice of appeal, and the matter was properly presented to the Superior Court of Wayne County, North Carolina, and said court has jurisdiction.

And as exhibits to the agreed statement of facts, the record discloses:

Exhibit A. Warranty deed from F. K. Borden, *et al.,* to the Atlantic Coast Line Railroad Company referred to hereinabove.

Exhibit B. Deed from Atlantic Land & Improvement Company, called for convenience "Improvement Company," to Goldsboro Union Station Company referred to hereinabove.

Exhibit C. Deeds from F. K. Borden and wife between dates of 17 October, 1904, and 30 October, 1912, for some of lots sold from the land shown on "Map and subdivision of land of F. K. Borden, Goldsboro, N. C.," prepared by L. J. Schwab in June, 1907, and recorded in Map

Book 2, page 2, described in reference to Mulberry, Walnut and Chestnut Streets, and Georgia and Carolina Avenues, and the railroad lines and Union Depot, all shown on said map.

The parties hereto pray the court to determine the following questions:

"(1) Are Chapter 397 of the Private Acts of 1901 and Chapter 215 of the Private Acts of 1925 valid and controlling in this matter?

"(2) Is the Atlantic Coast Line Railroad Company liable for the street assessments assessed against it for the paving on Chestnut Street and Mulberry Street, which cross at right angles the right of way conveyed to the Atlantic Coast Line Railroad Company by F. K. Borden, et al?

"(3) Is the Atlantic Coast Line Railroad Company liable for the street assessments assessed against it for the paving on Pine and Elm Streets, which cross the tracks of the Atlantic Coast Line Railroad Company and are contiguous with the right of way owned in fee simple by the Atlantic Coast Line Railroad Company?

"(4) Is the Atlantic Coast Line Railroad Company liable for the assessments assessed against it for paving on Georgia Avenue, which parallels and is contiguous with the right of way of the Atlantic Coast Line Railroad Company?

"(5) Is the Goldsboro Union Station Company liable for the assessments assessed against it for paving on that portion of Chestnut Street which crosses the land conveyed to the Goldsboro Union Station Company?

"(6) Is the Goldsboro Union Station Company liable for the assessments assessed against it for paving on that portion of Chestnut Street and on Pine Street, which strips are contiguous with the boundaries of the tract of land owned by the Goldsboro Union Station Company?"

The cause coming on for hearing, and being heard in Superior Court, before Judge Presiding, a jury trial being waived, judgment was entered in which it was "found, adjudged, ordered and decreed":

"1. That each and every street herein below named, and at the points designated, were, at the time of the improvements and assessments about which this controversy arose, and had been for forty or more years, a part of the regular street system of the City of Goldsboro.

"2. That all of the improvements and the assessments assessed therefor which are the subject of this controversy were made in full compliance with Chapter 215 of the Private Acts of 1925, which now constitutes a part of the Charter of the City of Goldsboro.

"3. That Chapter 215 of the Private Acts of 1925 is valid and controlling in this matter.

"4. That the Atlantic Coast Line Railroad Company is liable for and indebted to the City of Goldsboro for the assessments assessed against it

for the paving done on Chestnut and Mulberry Streets, which cross at right angles the right of way conveyed to it by F. K. Borden, *et al.*" Amount stated.

"5. That the Atlantic Coast Line Railroad Company is liable for and indebted to the City of Goldsboro for the assessments assessed against it for the paving done on Pine and Elm Streets, which cross the tracks of said Railroad, and are contiguous with the right of way owned by it in fee simple, in the . . . amount." Amount stated.

"6. That the Atlantic Coast Line Railroad Company is liable for and indebted to the City of Goldsboro for the assessments assessed against it for the paving done on Georgia Avenue which parellels and is contiguous to the right of way owned in fee by said Railroad, in the total sum" . . . stated.

"7. That the Goldsboro Union Station Company is liable for and indebted to the City of Goldsboro for the assessments assessed against it for the paving on that portion of Chestnut Street which crosses the land conveyed to it, in the total . . . sum" . . . stated.

"8. That the Goldsboro Union Station Company is liable for and indebted to the City of Goldsboro for the assessments assessed against it for the paving on that portion of Chestnut and of Pine Street, which strips are contiguous with the boundaries of the land conveyed to it in fee, in the total . . . sum" . . . stated.

"9. That all of the above assessments, from the dates of the confirmation thereof constitute a lien against the respective abutting property against which the same was assessed.

"10. That the costs of this action be paid by the defendants."

"The defendants object to the findings of fact as set forth in paragraphs 1, 2, 3, 4, 5, 6, 7 and 8 of the judgment and move that the same be set aside, for that the same are contrary to law and the facts as set forth in the agreed statement of facts. Motion overruled. Defendants except. (Exception #1.)

"Defendants object to the conclusions of law as set forth in the judgment. Objection overruled. Defendants except. (Exception #2.)

"Defendants object to the judgment and the signing thereof. Objection overruled. Defendants except. (Exception #3.)"

And defendants appeal to Supreme Court and assign error.

*Edwin C. Ipock for plaintiff, appellee.*
*W. B. R. Guion and W. Powell Bland for defendants, appellants.*

WINBORNE, J.  The defendants, appellants, assign as error the matters to which their Exceptions 1, 2 and 3 relate,—specifying under the 2nd, error in the conclusion that Chapter 215 of the Private Acts of 1925 is

valid and controlling in this action. And while in brief filed in this Court there is no reference to any particular exception, or assignment of error, appellants arrange their argument under the general heading "The court erred in ruling that defendants are liable for assessments on the right of way," and treat the subject in three subdivisions:

"A. The authority of a municipality to make improvements on the right of way is limited by the North Carolina General Statutes 160-104";

"B. The parties assessed received no benefit from the improvements are not liable for such assessments";

"C. Chapter 215 of the Private Laws of 1925 is void under the Constitution of North Carolina."

Also appellants in their brief say that in respect to "the power and machinery of Chapter 215 of the Private Acts of 1925 . . . No question is raised on this appeal as to action of the Board in complying with that Act."

Hence the Court considers each of the three subdivisions of the subject.

(C) It is contended by appellant that Chapter 215 of Private Laws 1925 is violative of Art. II, Sec. 29, an amendment to the Constitution of North Carolina, which declares, among other things, that "The General Assembly shall not pass any local, private, or special act or resolution . . . authorizing the laying out, opening, altering, maintaining, or discontinuing of highways, streets, or alleys," and that "Any local, private or special act or resolution passed in violation of the provisions of this section shall be void . . ."

In this connection, it is noted that the amendment, Art. II, Sec. 29, to the Constitution, was submitted to and adopted by the electorate and became effective on the second Wednesday after the first Monday in January, 1917, all pursuant to the provisions of Chapter 99 of Public Laws 1915.

And it is further noted that the General Assembly at the 1915 session passed "An Act Relating to Local Improvements in Municipalities," Chap. 56 of Public Laws 1915, which was incorporated in the Consolidated Statutes of 1919, as Art. 9 of Chap. 56, and later embodied in the General Statutes as Art. 9 of Chap. 160, beginning with G.S. 160-78.

This act provided that every municipality shall have the power, by resolution of its governing body, upon petition signed by at least a majority in number of the owners, who represent at least a majority of all the lineal feet of frontage of land abutting upon the street proposed to be improved, to cause local improvements to be made and to defray the expense of such improvements by local assessment, in manner specified. Sections 4 and 5, later C.S. 2706, 2707, and now G.S. 160-81 and G.S. 160-82. And in Sec. 2, later C.S. 2704, and now G.S. 160-79, it is provided that this act shall apply to all municipalities, and that it shall not

repeal any special or local law for the making of streets, sidewalks or other improvements thereby authorized, but shall be deemed to be additional and independent legislation for such purposes and to provide an alternative method of procedure for such purposes.

Therefore this act, Chap. 56 of P.L. 1915, did not affect Chap. 397 of Private Laws of 1901 relating to the city of Goldsboro, and the power given to the city for paving streets remained unimpaired.

This latter act, Chap. 397 Private Laws of 1901, provided in Sec. 61 "that the city of Goldsboro . . . may pave its streets and sidewalks . . .," and, in Sec. 74, "that the city of Goldsboro shall have power, in its discretion, to assess owners of land abutting on streets paved by said city with an amount not to exceed one-third of the actual cost of such paving in front of such abutting land . . ." And the act provided that all laws or. clauses of laws or parts of laws in conflict with this act are hereby repealed, and that it shall take effect and be in force from and after its ratification—13 March, 1901.

And it is further noted that the General Assembly later passed an act, Chap. 215 Private Laws 1925, entitled "An Act for Street and Sidewalk Paving in the City of Goldsboro," in Sec. 1 of which it is provided in pertinent part: "The board of aldermen of the city of Goldsboro shall have power and it is hereby authorized, without any petition so to do, to pave from time to time such streets and such sidewalks in the city of Goldsboro as, in its discretion, it may deem necessary, and assess the total cost (except cost of street intersections) of such paving against the abutting land in proportion to the respective frontage of such abutting land . . . 'Frontage means that side or limit of the lot or parcel of land which abuts directly on the street or sidewalk pavement.'" And it is also provided therein "that all laws and clauses of laws in conflict with this act are hereby repealed," and that the act shall be in full force and effect from and after its ratification—10 March, 1925.

Thus it is seen that Chap. 215 of Private Laws of 1925 merely increases the jurisdiction and authority granted to the city of Goldsboro under its amended charter, Chap. 397 of Private Laws 1901, hereinabove recited. This Court has held that such an act is not violative of Art. II, Sec. 29. *Deese v. Town of Lumberton* (1936), 211 N.C. 31, 188 S.E. 857. See also *S. v. Horne,* 191 N.C. 375, 131 S.E. 753; *Williams v. Cooper,* 222 N.C. 589, 24 S.E. 2d 484; *Bd. of Managers v. Wilmington,* 237 N.C. 179, 74 S.E. 2d 749; *S. v. Norman,* 237 N.C. 205, 74 S.E. 2d 602. Compare *Provision Co. v. Daves,* 190 N.C. 7, 128 S.E. 593; *S. v. Williams,* 209 N.C. 57, 182 S.E. 711.

Now, then, does Chap. 222 of Public Laws 1931 repeal the provisions of Chap. 397 of Private Laws 1901, and Chap. 215 Private Laws of 1925, relating to paving of streets? The caption of Chap. 222, P.L. 1931, reads

as follows: "An Act to Amend Chapter 56 Article 9 thereof, of the Consolidated Statutes, so as to authorize municipalities to make local improvements on streets on rights of way of railroads, and to specially assess a part of the cost of such improvement against property abutting directly on the work, other than property belonging to railroads."

And the preamble reads: "Whereas, in some of the municipalities of the State, certain streets have been laid out, used and occupied on rights of way owned by and/or occupied by railroads, upon which street or streets it may be found desirable to make improvements as defined by Section two thousand seven hundred and three of the Consolidated Statutes, and

"Whereas, it appears that it is impossible to obtain petitions as contemplated and required by the provisions of Article nine, Chapter fifty-six, of the Consolidated Statutes, for the making of such local improvements," etc.

Then Section 1 of the act in pertinent part reads: "That Article nine of Chapter fifty-six, of the Consolidated Statutes, be amended by adding at the end thereof the following paragraph:

" 'Municipalities desiring to make street and sidewalk improvements on property owned and/or leased by railroad companies, are hereby authorized to make such improvements on any such street used as a public street, subject to the rights of any such railroad company to use and occupy the same for railroad purposes: Provided, however, that the petition or petitions contemplated and required by the provisions of the Article, need not be signed by such railroad company or companies, nor shall any part of the railroad right of way be considered as abutting property, but the said petition shall be signed by at least a majority in number of the owners of property other than the railroad right of way, who must represent at least a majority of all the lineal feet frontage of the lands, other than said railroad right of way' . . .," etc.

Indeed the 1931 act does not attempt to amend the provisions of Section 2 of the Local Improvement Act. Chap. 56 of P.L. 1915, later C.S. 2704, now G.S. 160-79. This indicates that the General Assembly intended that the act of 1931 should become a part of, and be merged into the framework of the Local Improvement Act of 1915, in application and effect as therein set forth.

Moreover, this Court in *Bramham v. Durham,* 171 N.C. 196, 88 S.E. 347, quoting from Black on Interpretation of Laws, p. 117, says: " 'A local statute enacted for a particular municipality for reasons satisfactory to the Legislature is intended to be exceptional and for the benefit of such municipality.' " And, continuing, " 'It has been said that it is against reason to suppose that the Legislature, in framing a general system for the State, intended to repeal a special act which local circumstances made necessary.' "

Hence this Court holds that neither Chap. 397 Private Laws 1901, nor Chap. 215 of Private Laws of 1925 is affected by the repealing clause in the 1931 act.

(A) Now reverting to the provisions of Chap. 397 Private Laws 1901 and Chap. 215 of Private Laws 1925, is the Board of Aldermen of the city of Goldsboro, as a part of a street paving program, empowered to assess a part of the cost upon the property of defendants as abutting property?

The answer is "Yes."

Decisions of this Court indicate that the term "abutting land," as used in these acts, is sufficiently broad in meaning to cover land owned and used for railroad purposes. An affirmative answer is supported by the case of *Kinston v. R. R.* (1921), 183 N.C. 14, 110 S.E. 645. There the city, acting under statutory authority for assessing part of cost of street paving against abutting property, made assessment against right of way, owned by the railroad company, crossed by the streets so paved. And this Court in opinion by *Hoke, J.*, approved.

(B) Lastly appellants contend that the court erred in ruling that the defendants are liable for assessment on Georgia Avenue abutting on the right of way of the Atlantic Coast Line Railroad Company,—since the eastern edge of Georgia Avenue is contiguous with the western edge of the right of way of the Railroad Company.

As to this, we find in *Gunter v. Sanford,* 186 N.C. 452, 120 S.E. 41, opinion by *Adams, J.*, it is said: "It is also established that the Legislature has the power to determine by the statute imposing the tax what property is benefited by the improvement; and when it does so its determination is conclusive upon the owners and the courts, and the owners have no right to be heard upon the question whether their lands are benefited or not, but only upon the validity of the assessment and its proper apportionment," citing *Spence v. Merchant,* 125 U.S. 345, 31 L. Ed. 763.

And this Court continued by saying: "Our own decisions are in accord with this principle," citing and quoting from decided cases.

Hence for reasons stated, the judgment below is in accord with settled principles of law, and is, therefore,

Affirmed.