## Hamilton *v.* Phillips *et al.*

1. The verdict was contrary to the evidence.
2. When a widow elects to take dower in the estate of her husband, and it is assigned to her, that election estops her from claiming a child's part in any land which may afterwards be discovered, and which belonged to her husband at the time of his death. She may still assert her right to dower therein, and thus carry out a previous election; but having once made her election, she is bound by it.

April 17, 1889.

Verdict. Husband and wife. Election. Estoppel. Before Judge Richard H. Clark. Dekalb superior court. August term, 1888.

Reported in the decision.

JOHN S. CANDLER and HILLYER & BROTHER, for plaintiff in error.

CANDLER, THOMSON & CANDLER, *contra.*

SIMMONS, Justice.

It appears from the record in this case that James Phillips and George Phillips were brothers, and were partners in business in the town of Lithonia from 1857 to 1862. As such partners they purchased two lots of land, numbers 91 and 124. In 1862 James enlisted in the army. About this time it appears that the partnership was dissolved, and they divided the assets. James was taken sick in the army, and returned home, and died in 1864, leaving a wife and two children. George died in 1870 or 1871, leaving a wife and no children. James's widow intermarried with Norton, and had several children by him. George's widow intermarried with Dr. Hamilton, and died in 1880, leaving no children, and leaving Hamilton as her sole heir at law. In 1887 the two sons of James and their mother (then Mrs. Norton) commenced their action of ejectment against Dr. Hamilton, for an undivided half of lot 124. Subsequently Mrs. Norton, the mother, died. The two sons amended their declaration by striking her name therefrom. On the trial of the case, the jury returned a verdict for the plaintiffs for an undivided half of the land, and mesne profits. The defendant made a motion for a new trial on the several grounds taken therein, which was overruled by the court, and he excepted. One of these grounds was that the jury had found contrary to the evidence.

1. We think the court should have granted a new trial on this ground. The main question in this case was, whether the two brothers, James and George, had made a division of this land prior to their death. We have carefully read this evidence over several times, and are clear in our own minds that the jury did find

contrary to the evidence in the case. The evidence shows that James and George were partners in business; that as such partners they bought these two lots of land; that about the time James went to the army they had a division, and that James took possession of lot 91, made some improvements thereon, and held and occupied most of it until his death in 1864; that before he died he sold fifty acres of that lot to his sister, Mrs. Blackburn, and made her a deed therefor. After he died, George administered upon his estate and had his property appraised. This lot was appraised with the balance of his property, and his brother P. C. Phillips was one of the appraisers. Leave was obtained from the ordinary of the county to sell this land as the property of James Phillips, and it was sold by his administrator, and was purchased by his brother P. C. Phillips. The record does not show that any objection was made by George, the administrator, or the widow of James, or any of his relatives, to the appraisement and sale of this lot (91) as the property of James. It was then fresh in the minds of George, the brother and administrator, and also in the minds of the widow of James and his brother P. C.; and it seems to us that if these two lots had then been held in common by the two brothers, something would have been said or done by the parties while all this was going on.

In addition to this, the record further shows that while James took possession of lot 91, his brother George took possession of lot 124, the premises in dispute; that about the time of the dissolution of the partnership, George went into possession of lot 124, built houses thereon, cleared thirty or forty acres of the land, paid for the building of the houses and the clearing of the land, and lived thereon until his death in 1870 or 1871. One of the witnesses testified that during this time and in the lifetime of James, the witness and

George cut and sold from the land a thousand dollars worth of cord-wood, and a quantity of cross-ties, and that George collected the money and paid witness his part of it. Another witness testified that he rented lot 124 for one year from George, and rented for the same year lot 91 from James; that he paid James the rent of lot 91, and paid George the rent of lot 124, and that James knew that he had paid the rent of lot 124 to George, and that James never made any demand on him for the rent of that lot, nor did he ever claim any interest therein. Another witness testified that in 1862, he bargained with George for this land, and subsequently became uneasy about George's title thereto; that he went to see James and asked him about George's right to make title to the whole lot. James told him that George owned the whole lot. These facts are not denied or contradicted by any witness in the case, and we think that they clearly show that upon the dissolution of partnership between these brothers, they agreed to divide these two lots, and that they did divide them, James taking 91 and George taking 124. All their acts and declarations as disclosed by the record show that this must have been the manner in which it was done. Of course, after the lapse of a quarter of a century, and the death of all the parties, it would be impossible to prove an actual agreement for partition between the brothers, and we must rely upon their conduct and their declarations, and these are all consistent with the idea of a division or partition between them.

2. The only other question made in the motion for a new trial which we deem it necessary to notice, is the third ground of the motion. It was contended by the plaintiff in error that Mrs. Norton, the widow, and the mother of the two plaintiffs, should not have been stricken from the declaration, and that the court erred in holding that the two sons could recover the undi-

vided half of lot 124, and that Mrs. Norton could not recover any interest in that lot. It was in proof on the trial that after the death of James, his widow elected to take dower in his land instead of a child's part, and that the dower was assigned to her in the lands of her husband. Under this state of facts, we do not think the court erred in holding that she could not recover an interest in the fee in this lot 124. We think that when a widow elects to take dower in the estate of her husband. and it is assigned to her, that election estops her from claiming a child's part in any land which may afterwards be discovered, and which belonged to her husband at the time of his death. She may still assert her right to dower therein, and thus carry out a previous election, but she cannot, in our opinion, take dower in a part of the estate and claim a child's part or interest in other land which may subsequently be discovered to have belonged to her husband at the time of his death. Having once made her election she is bound by it.

*Judgment reversed.*