WILLIAM C. McINTYRE, A RESIDENT CITIZEN AND TAXPAYER OF CHARLOTTE, MECKLENBURG COUNTY, NORTH CAROLINA, ON HIS OWN BEHALF AND ON BEHALF OF THE OTHER TAXPAYERS OF SAID COUNTY, v. HONORABLE F. O. CLARKSON, SENIOR RESIDENT JUDGE OF THE 26TH JUDICIAL DISTRICT OF NORTH CAROLINA, AND JESSIE CALDWELL SMITH, TREASURER OF MECKLENBURG COUNTY, NORTH CAROLINA, AND WALKER H. BUSBY, MECKLENBURG COUNTY AUDITOR AND ACCOUNTANT.

(Filed 3 May, 1961.)

**1. Constitutional Law § 4:    Statutes § 4—**

A taxpayer may test by injunction the constitutionality of a statute relating to the appointment of and payment of compensation to justices of the peace in the county, since such statute involves the expenditure of public funds and also relates to an office which affects the business and social life of each citizen of the county.

**2. Constitutional Law § 6—**

All legislative powers of the State are vested in the General Assembly and it may exercise all such powers unless specifically prohibited or limited by some provision of the Constitution, the wisdom and expediency of legislation being exclusively within its province.

**3. Constitutional Law § 10—**

While all doubt as to the constitutionality of a statute will be resolved in favor of the lawful exercise of their powers by the representatives of the people, it is the duty of the courts to declare a statute unconstitutional in proper cases when the statute clearly transgresses constitutional limitations.

**4. Statutes § 1—**

In regard to the limitations prescribed by Art. II, Sec. 29 of the Constitution of North Carolina, all statutes dealing with the subjects specified must be classified either as local, private, or special acts, which are void, or general laws, which the General Assembly has power to pass.

**5. Same—**

The test of whether a statute is local or general is not the amount of

territory to which it applies, but whether it is of general state-wide application as to all persons and localities coming within prescribed classifications, since the Constitution does not prohibit the Legislature from prescribing classifications provided such classifications are based upon rational differences of need, population, situation, or condition, and the statute operates uniformly as to all persons, things, or localities coming within each particular classification.

**6. Same—**

A statute applicable only to a specified locality or localities will not be held to contravene Art. II, Sec. 29 of the State Constitution if the statute merely supplements general laws on the subject, or offers aid in administering or financing policies established by general law, especially when the administrative unit is local in nature.

**7. Same:    Courts § 17—**

G.S. 7, Art. 14A authorizing certain counties to adopt its machinery for the appointment, tenure, and payment of justices of the peace is indivisible, since all of its provisions depend upon the exclusive power of appointment therein provided.

**8. Same—**

G.S. 7, Art. 14A, is a local statute relating to the appointment of justices of the peace proscribed by Art. II, Sec. 29 of the Constitution, since the statute exempts from its coverage a large number of counties without any real or logical basis of classification either as to need, population, topography or otherwise.

**8. Same—**

G.S. 7, Art. 14A may not be upheld as being supplementary to the 1955 Act granting the resident judges of the Superior Court authority to appoint justices of the peace, since the statute is not supplementary to the 1955 Act but is in direct conflict therewith in providing exclusive authority to appoint justices of the peace.

Higgins, J., concurs.

Bobbitt, J. dissenting.

Appeal by plaintiff from *Campbell, J.,* at Chambers 18 November 1960 in Mecklenburg.

Civil action to restrain the appointment of, and payment of salaries to, justices of the peace for Mecklenburg County under the provisions of Article 14A, Chapter 7, of the General Statutes of North Carolina.

Defendants admit the factual allegations of the complaint. The facts thus stipulated and judicially admitted are (numbering ours):

1. Plaintiff is a resident, citizen and taxpayer of Mecklenburg County and sues on "his own behalf as a taxpayer, and for the benefit of the other taxpayers of Mecklenburg County."

2. Defendants are: F. O. Clarkson, senior Resident Superior Court

Judge of the 26th District (Mecklenburg County); and Jessie Caldwell Smith and Walker H. Busby, Treasurer and Auditor of Mecklenburg County, respectively.

3. On 7 March 1960 the Board of County Commissioners of Mecklenburg County adopted a resolution accepting for Mecklenburg County "all of the provisions of Article 14A of the General Statutes of North Carolina providing for the appointment of Justices of the Peace by the Resident Judge and the abolition of the fee system." The resolution provided for 41 justices of the peace: 2 for service in the County Recorder's Court, 12 for service in the county rural police force, 13 for service in the Charlotte City police force, 3 for service in the City Recorder's Court, 3 for service in the Domestic Relations Court, and 8 for general trial service in Mecklenburg County. The terms of office were fixed at 2 years, to begin in December 1960.

4. On 11 July 1960 a budget resolution was adopted by the Board of Commissioners appropriating $33,995.00 from the County's general fund for payment of salaries and expenses of justices of the peace for 7 months, December 1960 to June 1961, inclusive. The authorized number of trial justices of the peace was reduced from 8 to 5, with recommendation that the number be held to 3 unless it appear that a greater number is needed. Salaries for trial justices were fixed at $6,000 each.

5. Judge Clarkson has announced that he will make the appointments in conformity with the resolutions.

The complaint alleges that Article 14A, Chapter 7, of the General Statutes of North Carolina (G.S. 7-120.1 to G.S. 7-120.11, inclusive) is unconstitutional, the appointment of justices of the peace pursuant to this article would be unlawful, payment of their salaries from the general fund would constitute an unauthorized and unlawful expenditure of public funds and would irreparably injure plaintiff and the other taxpayers of Mecklenburg County. Plaintiff prays for injunctive relief.

On 28 September 1960 Craven, S. J., denied plaintiff's motion for a temporary restraining order.

At the hearing before Campbell, J., 18 November 1960, defendants' demurrer *ore tenus* was overruled. Defendants excepted. Then, after hearing arguments of counsel, the judge made an order denying plaintiff's motion for injunction.

Plaintiff appealed.

Plaintiff filed motion in Supreme Court for restraining order pending appeal. The motion was granted 14 December 1960.

*J. F. Flowers and Mercer J. Blankenship for plaintiff.*

*E. McA. Currie for defendant F. O. Clarkson.*

*Dockery, Ruff, Perry, Bond & Cobb for defendants Busby and Smith.*

*Whiteford S. Blakeney for the District Bar of the Twenty-Sixth Judicial District, as Amicus Curiae.*

Moore, J.   In this Court defendants demur *ore tenus* to plaintiff's complaint on the grounds that it does not state facts sufficient to constitute a cause of action, and does not show that the plaintiff has sufficient legal interest to maintain the action.

Defendants contend that a resident, citizen and taxpayer, as such, does not have sufficient interest in the controversy to maintain an action, for himself and on behalf of others similarly situated, to challenge the constitutionality of a statute providing for the appointment of justices of the peace for the county in which he resides and for payment of their salaries from the general fund of the county.

" 'Courts will not declare void an Act of the Legislature unless the question of its constitutionality is presently presented and it is found to be necessary to do so in order to protect rights guaranteed by the Constitution.' *Fox v. Commissioners*, 244 N.C. 497, 94 S.E. 2d 482. Only an injured party may assail the validity of a statute. *Yarborough v. Park Commission*, 196 N.C. 284, 145 S.E. 563." *Carringer v. Alverson, ante,* 204, 208.

But this Court has in numerous cases determined the constitutionality of statutes upon suit for injunctive relief by taxpayers where the expenditure of public funds is involved. *Dennis v. Raleigh,* 253 N.C. 400, 116 S.E. 2d 923; *Freeman v. Comrs. of Madison,* 217 N.C. 209, 7 S.E. 2d 354.

Here, the Commissioners of Mecklenburg County have made an appropriation from the general fund of the county for payment of salaries of justices of the peace under the purported authority of Article 14A, Chapter 7, of the General Statutes of North Carolina. When the case was argued in this Court it was admitted that the resident judge had appointed justices of the peace for Mecklenburg County in conformity with the resolution of the Commissioners putting Article 14A into effect. The appointments were made before the interlocutory injunction was issued by this Court. The present suit calls into question the legality of the appointments and the resolutions of the Commissioners adopting the provisions of Article 14A and appropriating funds for salaries and other expenses of justices of the peace. These matters are of serious concern to the citizens and taxpayers of Mecklenburg County and of the State at large. It is es-

sential to the effective and orderly government of Mecklenburg County that an immediate determination of the case be had on the merits. In addition to the issuance of warrants and the adjudication of certain civil and criminal actions, justices of the peace have many official duties and powers, including the performing of marriage ceremonies and the taking of acknowledgments of deeds and deeds of trust. Their activities vitally affect the business and social life of the State. It would be stretching a procedural rule to the breaking point to hold that a citizen and taxpayer must violate a criminal law, breach a contract, commit a tort, contract a questionable marriage or make a doubtful acknowledgment of a deed before he may, on his own part and on behalf of other citizens and taxpayers of his county, invoke the equitable jurisdiction of the courts to have determined the validity of a statute which so vitally affects the public welfare and public funds.

The demurrer *ore tenus* is overruled.

Prior to the enactment of Article 14A, Chapter 7, of the General Statutes of North Carolina (G.S. 7-120.1 to G.S. 7-120.11), there were four methods of selecting justices of the peace: (1) popular elections in the township (G.S. 7-113); (2) appointments by the Governor (G.S. 7-114 and 7-115); (3) appointments by the General Assembly (*In re "Omnibus Bill,"* 227 N.C. 717); and (4) filling of vacancies by the clerks of superior court (G.S. 7-114). These methods were all statewide in application.

In 1949 the General Assembly passed the law in question on this appeal — Article 14A, Chapter 7, hereinafter referred to as the 1949 Act. It is permissive only, and becomes effective in a particular county if and when adopted by resolution of the county commissioners of that county. It impowers the commissioners to fix the number of justices of the peace to be appointed and authorizes the resident judge of the superior court to make the appointments and to remove from office for cause, after hearing. The appointees serve two-year terms and are paid salaries from the general county fund in lieu of fees. They are required to give bond and make daily deposits of all fees, fines and forfeitures collected. The commissioners are required to provide offices and to designate the place or places where each justice of the peace shall sit regularly. The Act purports to repeal G.S. 7-113 and the last two sentences of G. S. 7-114 and G.S. 7-115, and thereby to abrogate all other methods of election or appointment of justices of the peace in the particular adopting county, except that vacancies are filled by the clerk of superior court. The Act exempted 73 counties from its operation. In 1957 Hoke County was added. There are presently 72 exempted counties.

In 1955 the General Assembly rewrote G.S. 7-115, hereinafter referred to as the 1955 Act. It now provides that in case of need resident judges in their discretion may, from time to time, appoint one or more fit persons as justice of the peace in the county or counties within their respective districts. The term of office is two years and the appointees may be removed by the resident judge for cause, after hearing. This Act is "In addition to other methods provided by law for appointment or election of a justice of the peace." This Act is a statewide law and no counties are exempted.

". . . (A) doctrine firmly established in the law is that a State Constitution is in no matter a grant of power. All power which is not limited by the Constitution inheres in the people, and an act of a State legislature is legal when the Constitution contains no prohibition against it." *Lassiter v. Board of Elections*, 248 N.C. 102, 112, 102 S.E. 2d 853.

The members of the General Assembly are representatives of the people. The wisdom and expediency of a statute are for the legislative department, when acting entirely within constitutional limits. The courts will not disturb an act of the law-making body unless it runs counter to a constitutional limitation or prohibition. *Finance Co. v. Pittman*, 253 N.C. 550, 553, 117 S.E. 2d 423; *State v. Warren*, 252 N.C. 690, 696, 114 S.E. 2d 660; *Lilly & Co. v. Saunders*, 216 N.C. 163, 170, 4 S.E. 2d 528.

"It is well settled in this State that the Courts have the power, and it is their duty in proper cases, to declare an act of the General Assembly unconstitutional — but it must be plainly and clearly the case. If there is any reasonable doubt, it will be resolved in favor of the lawful exercise of their powers by the representatives of the people." *Glenn v. Board of Education*, 210 N.C. 525, 529-30, 187 S.E. 781. See also *State v. Moore*, 104 N.C. 714, 717, 10 S.E. 143.

Plaintiff contends that the 1949 Act contravenes Article II, section 29, of the Constitution of North Carolina, in that it is a special and local Act and is not a general Act applicable to the entire State.

In 1916 three constitutional amendments were ratified — Article II, sec. 29; Article VIII, ss. 1, 4. They became effective 10 January 1917. They were designed to remove some sixteen or more subjects from the field of local, private and special legislation.

It was argued by the proponents of the amendments that they were necessary and essential for that the membership of the General Assembly as a whole had little knowledge of local, private and special needs and conditions, the General Assembly should be permitted to devote more time and attention to general legislation of statewide interest and concern, local self-government should be strengthened by

delegating local matters by general laws to local officials, and legislation should relate to the State "as a single united commonwealth rather than as a conglomeration of innumerable discordant communities." Prior to the adoption of the amendments a large percentage of the laws enacted by the Legislature was "local, private and special": 1911 — 85%; 1913 — 87%; 1913 (Special Session) — 84%; 1915 — 81%. During the period 1868 to 1917, there were 225 local, private and special Acts relating to the appointment of justices of the peace. Popular Government, issue of February-March, 1949. *Idol v. Street*, 233 N.C. 730, 732, 65 S.E. 2d 313.

Article II, section 29, of the Constitution of North Carolina, as it relates to this appeal, is as follows: "The General Assembly shall not pass any local, private or special act or resolution relating to . . . the appointment of justices of the peace . . . nor shall the General Assembly enact any such local, private or special act by partial repeal of a general law . . . Any local, private or special act or resolution passed in violation of the provisions of this section shall be void. The General Assembly shall have power to pass general laws regulating matters set out in this section."

Article II, section 29, of the Constitution will be hereinafter referred to as the 1917 Amendment.

The 1949 Act directly relates to the appointment of justices of the peace in the adopting counties. It excludes all other methods of appointment or election. Appointments are made by the resident judge. It provides for two-year terms, salaries and places of sitting. It is indivisible legislation; its several parts are inter-dependent. Prior to its enactment there had been no provision for appointment of justices of the peace by superior court judges.

The question clearly presented is whether or not the 1949 Act is "local, private or special" legislation rather than "general." If it is "local, private or special," it contravenes the 1917 Amendment and is void. If "general," it is valid. There is no middle ground. ". . . (A)s to the particular types of legislation described in Art. II, sec. 29, of our Constitution, all legislative enactments are to be classified in one of two classes: (1) 'local, private or special' acts which are 'void,' or (2) 'general laws' which the General Assembly has 'power to pass.'" *State v. Dixon*, 215 N.C. 161, 165, 1 S.E. 2d 521.

The substance of plaintiff's contention is that the 1949 Act is local and special in that it applies to less than a majority of the counties of the State. He reasons that a law is general if it affects a majority of the counties, local if it applies to less than a majority. In support of this proposition he cites *In re Harris*, 183 N.C. 633, 112 S.E. 425, and *State v. Dixon, supra.*

Defendants contend that the 1917 Amendment "prohibits direct, explicit and mandatory action by the General Assembly; that it does not prohibit the General Assembly's setting up machinery by which local groups may undertake certain action." They also rely on *Harris* and particularly cite the following cases: *Kornegay v. Goldsboro*, 180 N.C. 441, 105 S.E. 187; *Huneycutt v. Commissioners*, 182 N.C. 319, 109 S.E. 4; *Hill v. Commissioners*, 190 N.C. 123, 129 S.E. 154; *Reed v. Engineering Company*, 188 N.C. 39, 123 S.E. 479; *Fletcher v. Comrs. of Buncombe*, 218 N.C. 1, 9 S.E. 606.

The parties find comfort in their respective contentions from language found in the cases relied on by them. However, the clauses of the Constitution limiting, restricting or prohibiting local, private and special legislation vary in purpose, scope and application. In determining the effect of one of these constitutional provisions in a particular case regard must be had to the terms and purpose of the statute in question and to the object and scope of the constitutional prohibition. The factors are so variable that no exact rule or formula capable of constant application can be devised for determining in every case whether a law is local, private or special or whether general. This fact has led to the comment in some quarters that the decisions of this Court in this line of cases lack consistency and uniformity and are "in a state of flux." That there are apparent inconsistencies we do not dispute, but a careful analysis of the cases with due regard to the factors involved will disclose a generally harmonious application of principles.

" 'It seems impossible to fix any definite rule by which to solve the question whether a law is local or general, and it has been found expedient to leave the matter, to a considerable extent, open, to be determined upon the special circumstances of each case.' " *In re Harris, supra,* 635.

General definitions are inadequate to determine, in a given situation, the distinction between local and general legislation, as witness the following. Special laws are those made for individual cases, local laws are special as to place. *Mills v. Commissioners*, 175 N.C. 215, 218, 95 S.E. 481. A local act is one operating only in a limited territory or specified locality. *Idol v. Street, supra*. A private law is one which is confined to particular individuals, associations or corporations. *Yarborough v. N.C. Park Commission, supra*. General laws embrace the whole of a subject and are of common interest to the whole State. Sutherland on Statutory Construction, 3d Ed., Vol. 2, s. 2102, p. 9.

The following summation of the matter, however, seems to clearly state the principles which must be applied in the instant case: "The

phrase 'local law' means, primarily at least, a law that in fact, if not in form, is confined within territorial limits other than that of the whole state, or applies to any political subdivision or subdivisions of the state less than the whole, or to the property and persons of a limited portion of the state, or to a comparatively small portion of the state, or is directed to a specific locality or spot, as distinguished from a law which operates generally throughout the state. Such a law, enacted by a state legislature, touches but a portion of its territory, a part of its people, or a fraction of the property of its citizens. Within the meaning of constitutional prohibitions against local laws, a law is local where, by force of an inherent limitation, it arbitrarily separates some places from others upon which, but for such limitation, it would operate, where it embraces less than the entire class of places to which such legislation would be necessary or appropriate having regard to the purpose for which the legislation was designed, and where the classification does not rest on circumstances distinguishing the places included from those excluded. In other words, a local law discriminates between different localities without any real, proper, or reasonable basis or necessity — a necessity springing from manifest peculiarities clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class separately that would be useless or detrimental to the others. However, mere classification does not render a law local in the constitutional sense. Where a law is broad enough to reach every portion of the state, and to embrace within its provisions all localities of a class distinguished by characteristics sufficiently marked and important to make them clearly a class by themselves, or to reach the whole of a legislative class of localities legitimately created for purposes of general legislation, or all places affected by the conditions to be remedied, so that the statute operates uniformly throughout the state under like circumstances, and its classification is reasonable and based upon a rational difference of situation or condition, it is not a local law, even though it does not actually apply to all parts of the state, or indeed, even though there are only a few places, or one place, on which the statute operates." 50 Am. Jur., Statutes, s. 8, pp. 24-26.

"For a law to be general it is only required that the objects of its operation be reasonably classified. . . . when the persons or things subject to the law are not reasonably different from those excluded, the statute is local or special." 24 Kentucky Law Journal (1935-1936), p. 364. "Universality is immaterial so long as those affected are reasonably different from those excluded and for the purpose of the act there is a logical basis for treating them in a different manner. When the

operation of the law is limited by the presence or absence of features which are inconsequential to the object of the statute — which creates an artificial class of those affected — it is special or local." *ibid,* p. 375. ". . . (T)he legislature has broad discretion in establishing a class . . . ." *ibid,* p. 376. ". . . (U)ltimately the problem is resolved into the question of what facts in each case are sufficiently important to justify the exclusions and inclusions." *ibid,* p. 379. In making classifications, differences in population of municipalities, geographical differences, and relative business activities of certain types in different localities have been held as valid bases. *ibid. pp.* 380, 381.

A law is general "if it applies to and operates uniformly on all the members of any class of persons, places or things requiring legislation peculiar to itself in matters covered by the law." Classification must be reasonable and germane to the law. It must be based on a reasonable and tangible distinction and operate the same on all parts of the state under the same conditions and circumstances. Classification must not be discriminatory, arbitrary or capricious. While substantial distinctions which are inherent are essential in classification, the distinctions need not be scientific or exact. The Legislature has wide discretion in making classifications. Crawford: Statutory Construction, ss. 81, 82, pp. 115-119.

A law is general, not because it operates on every person in the State, but because every person brought within the relations and circumstances provided for by the Act is affected. Statutes relating to persons or things as a class are general laws. The test is whether the classification is reasonable and whether it embraces all of the class to which it relates. Classifications must be general within the limits of the subject matter. They must be reasonable and the statute must affect all within the class uniformly. Classifications must not be arbitrary or capricious, but must be natural and intrinsic and based on substantial differences. Classifications have been sustained on the ground of need. Sutherland on Statutory Construction, 3d Ed., Vol. 2, ss. 2102-2106, pp. 6-22.

Whether or not the 1949 Act is based on a proper classification of the subject matter dealt with is the question that must be answered in determining its validity.

The instant case is the first which has reached this Court involving the clause of the 1917 Amendment "relating to the appointment of justices of the peace." The case most nearly akin to the one *sub judice* is *In re Harris, supra.* As already indicated, it is cited and discussed in the brief both of plaintiff and defendants. The General Assembly in 1919 passed "An Act to establish a uniform system of recorders' courts for municipalities and counties in this State." Forty-

four counties were exempted from its provisions. Harris was tried and convicted in a court organized pursuant to this Act. Our Court held that the Act did not violate the 1917 Amendment prohibiting local, private or special legislation "relating to the establishment of courts inferior to the Superior Court." In short, the Act was held to be "general." The opinion discusses at considerable length, and quotes from, an 1881 New York opinion, *People ex rel. Clauson v. Newburgh and Shawangunk Plank Road Co.,* 86 N.Y. 1 (the page citation in the state report of *Harris* is in error). Apparently our Court took the view that the number of counties involved took it from the category of local law, and explained: ". . . (T)he statute is designed and intended to provide for as many as 56 out of the 100 counties of the State, and could in no sense be regarded as a local or special law within any usual or ordinary meaning of these terms." However, the Court took cognizance of the classification test and brought the case clearly within that principle, which, it seems to us, was the sound basis for the decision. The opinion continues: "It is well known that at the time this law was enacted there were 20 or 25 of these recorders' courts already established and doing satisfactory work, and in the remaining excepted counties it was estimated that the regular courts were then so fixed in time and number as to afford adequate facilities for the administration of public justice in those counties. It is always presumed that a Legislature acts rightly and from proper motives, and a classification of this kind, when made by them, should not be disturbed unless it is manifestly arbitrary and invalid." Based on a classification of "need" the Act was general and the correct result was reached.

In *State v. Dixon, supra,* the majority opinion was delivered by *Clarkson, J. Barnhill, J.* (later *C.J.*), concurred; *Devin, J.* (later *C.J.*), dissented, and *Schenck and Seawell, JJ.,* joined in the dissent. In 1937 the General Assembly passed an act purporting to regulate real estate brokers and salesmen in thirty-six counties. The act was declared to be local. The following quotations from the concurring opinion seem extremely pertinent:

> ". . . (A) general law as distinguished from a special or local law is that it is a law that embraces a class of subjects or places and does not omit any subject or place naturally belonging to such class. A law is general in the constitutional sense when it applies to and operates uniformly on all members of any class of persons, places or things requiring legislation peculiar to itself in matters covered by the law. . . .

> "On the other hand, a special statute is one which does not include all of the persons within a given class, but relates to less

than all the class, or one which relates and applies to particular members or a particular section of a class, either particularized by the express terms of the act or separated by any method of selection from the whole class to which the law might but for such limitation be applicable. . . .

"The legislation under consideration is general in its terms and applies to real estate brokers and salesmen as a class. . . . Thus, it appears that the purpose of the act is to regulate the trade of real estate brokers and salesmen, and that the legislature grouped the real estate brokers of the State as a whole into a class sufficiently distinguished by characteristics to make it the subject of legislation. However, notwithstanding the declared intent of the Legislature to deal with real estate brokers and salesmen as a class throughout the State, the act . . . exempts from the operation thereof 64 counties. It appears, therefore, that the act does not apply to real estate brokers and salesmen throughout the State as a class, notwithstanding the declared purpose of the Legislature. The lawmaking body made a reasonable classification of citizens and then, by the express terms of the act, excluded from its operation a large portion of the class. To my mind, this alone stamps the legislation as special, brings it within the prohibitive provisions of Art. II, sec. 29, of the Constitution, and makes it invalid."

The majority opinion does not discuss classification, but the general tenor of the opinion is consistent with that principle stated in the concurring opinion.

For a few of the cases in this jurisdiction clearly applying the classification principle see: *Finance Co. v. Currie, Comr., ante,* 129, 118 S.E. 2d 543; *Lilly & Co. v. Saunders, supra; Roach v. Durham,* 204 N.C. 587, 169 S.E. 149; *State v. Lockey,* 198 N.C. 551, 152 S.E. 693; *State v. Call,* 121 N.C. 643, 28 S.E. 517.

The other cases particularly cited and relied on by the defendants are not pertinent to the instant controversy. But a brief reference to a few of them may serve to show the distinguishing features.

Of *Kornegay v. Goldsboro, supra,* it was said: "A battle royal split the court." Popular Government, issue of February-March, 1949, p. 11. In 1920 an Act was passed authorizing the cities, towns, townships and school districts of Wayne County to sell bonds at less than par for payment of debts theretofore incurred and due or soon to be due. Here the provisions of Article VIII, ss. 1 & 4, of the Constitution were involved. The Court held that section 1 has no application to municipal corporations and relates only to private corporations, and

that section 4 does not prohibit local, private and special legislation but imposes on the Legislature a "moral obligation" to provide for the matters therein listed by general laws.

In those situations in which the county is the established and designated unit for the administration of a general, statewide law or policy, a statute, having application to one or more counties, which merely supplements the general law or policy, or aids in the administration according to local needs, or is primarily designed to finance the operation, is not unconstitutional if it does not directly or specifically violate a constitutional prohibition against local, private or special legislation; and this is true even if the statute incidentally or indirectly relates to the prohibited subject. A few examples follow.

Most of the cases relating to roads and bridges arose during the period when roads and bridges were, for the most part, the responsibility of the counties and the counties were the units for administration purposes. In *Brown v. Commissioners,* 173 N.C. 598, 92 S.E. 502 (1917), plaintiffs sought to enjoin the Commissioners of McDowell County from issuing bonds and levying special taxes for road purposes pursuant to an Act applying to North Cove Township. The 1917 Amendment prohibits local acts authorizing the laying out, opening, altering, maintaining, or discontinuing of highways, streets or alleys. The Court held that the 1917 Amendment was not violated, that the Act only provided the means for constructing and maintaining roads. Accordant: *Commissioners v. Bank,* 181 N.C. 347, 107 S.E. 245 (1921); *Commissioners v. Pruden,* 178 N.C. 394, 100 S.E. 695 (1919); *Martin County v. Trust Co.,* 178 N.C. 26, 100 S.E. 134 (1919); *Mills v. Commissioners, supra. Huneycutt v. Commissioners, supra,* involves an Act "creating the board of road commissioners of Stanly County, and giving to them the entire control and management of the public roads and bridges in said County." In sustaining the Act the Court explained that the 1917 Amendment had not been violated, for the purpose of the legislation was "to provide ways and means by which the general road work of the entire County might be successfully carried on and maintained." In a similar case the Court took the position that the authority conferred by the Act in question was supplemental to the general law and valid. *Hill v. Commissioners, supra.*

On the other hand, a statute which directed the building of a bridge at a specified place across a stream between two counties and authorized the issuance of bonds and levying of a tax for that purpose was held to contravene the 1917 Amendment. *Day v. Commissioners,* 191 N.C. 780, 133 S.E. 164 (1926). After the State took over the

responsibility of constructing and maintaining the roads of the State, a statute limiting the territory to five counties for the construction of toll bridges by a private corporation was declared a local law and void as violative of the 1917 Amendment. *Coastal Highway v. Turnpike Authority,* 237 N.C. 52, 74 S.E. 2d 310 (1953).

An Act applicable to a single city, which authorized the municipality to make street improvements and assess the cost thereof against abutting property owners without a petition therefor, was held to be constitutional since the Act was merely declaratory of the powers given the municipality under the general law and did not purport to authorize the laying out of a particular street or streets. *In re Assessments,* 243 N.C. 494, 91 S.E. 2d 171 (1956). See also *Goldsboro v. R.R.,* 241 N.C. 216, 85 S.E. 2d 125 (1954).

The 1917 Amendment prohibits local, private and special legislation undertaking to establish or change the boundaries of any school district. But this provision does not proscribe the General Assembly from setting up machinery under which a county, as the administrative unit charged in a general law with making provision for necessary capital outlay, may create school districts or special bond tax districts within the county to provide the capital outlay. *Fletcher v. Commissioners of Buncombe, supra.*

The General Assembly is prohibited, by the 1917 Amendment, from passing any local, private or special act relating to health, sanitation and the abatement of nuisance. An Act, applicable to one county, authorizing the formation of sanitary sewerage districts throughout the county, the boundaries to be fixed by certain designated local authorities in a specified manner, does not violate the constitutional provision. The purpose of the Act is not to regulate health or sanitary matters or to abate nuisances. *Reed v. Engineering Co., supra.* But a statute authorizing the City of Wilmington and New Hanover County to make provision for the hospitalization and medical care of the indigent sick without a vote of the people was void. *Board of Managers v. Wilmington,* 237 N.C. 179, 74 S.E. 2d 749 (1953). Also, an ordinance adopted by a City-County board of health regulating the production for sale and sale of milk within the county, and the statute purporting to confer authority therefor, are unconstitutional. *Idol v. Street, supra.*

The preceding references suffice to illustrate the holdings that statutes which do not directly contravene the 1917 Amendment but supplement general laws and policy, or aid in administering or financing policy established by general law, are not unconstitutional, especially when the administrative unit is local in nature. They also

contain examples of statutes which are unconstitutional because they directly offend the 1917 Amendment.

The office of justice of the peace is constitutional in origin and existence. Provision is made for justices of the peace in each township of the State — whether this provision is mandatory does not arise here. Their jurisdiction, limitations, duties and obligations are uniform throughout the State. It is a judicial office and as such is not in a true sense subject to local supervision as are many executive agencies. The Constitution prohibits and renders void all local, private or special legislation relating to their appointment.

The 1949 Act relates directly to the appointment of justices of the peace. The Act is indivisible. Without *exclusive* appointive power, the provisions relating to salaries, the limitation of the number to be appointed, the designation of places for sitting, the giving of bonds, and other requirements would be impracticable and would also be discriminatory. The *exclusive authority to appoint* is the essential, primary and controlling feature of the Act.

The Act is applicable to only 28 counties. Do the justices of the peace, or the essential method of their appointment, in the 28 counties constitute an inherent and reasonable class or classification as distinct from the justices of the peace and appointive methods in the other 72 counties? We think not. The 28 counties are scattered from Currituck to Graham. Three are mountain counties, sixteen are eastern and coastal counties, and nine are in the piedmont. They have among them some of the smallest in population and property valuation, and some of the largest in these categories. Some of the counties are almost completely rural, others are largely urban. To illustrate, the following are some of the included counties: Mecklenburg, Buncombe, Columbus, Orange, Dare, Camden. There is no perceivable circumstance related to the office of justice of the peace which serves as a basis for classification of these officials and their activities in the 28 counties, distinguishing them from the justices of the peace of the excluded 72 counties. As a matter of fact there are, among the included 28 counties, vast differences in geography, business, industry, wealth and population. In the same proportions, differences exist between the included countries with respect to the volume of work done by justices of the peace. As to each of the counties included in the Act, there are comparable counties, in all aspects relating to the office of justice of the peace, among those excluded. For instance, we can conceive of no circumstance that makes the 1949 Act more practical or necessary for Mecklenburg County than for Guilford or Forsyth County — certainly the record discloses none. Nor does it appear that other methods of appointment are less desirable for the

28 than for the 72 counties. The conclusion is inescapable that there is no reasonable, inherent and distinctive feature which makes the 28 counties a group apart from the 72 excluded counties so that it can be said that the 1949 Act applies alike to all justices of the peace of the State similarly situated.

Application of the principles of reasonable classification as hereinbefore discussed is essential in proper cases. It is particularly applicable to the instant case. If the 1949 Act is a "general" law in the constitutional sense, it follows that North Carolina could have an indefinite number of permissive statutes relating to the appointment of justices of the peace, each subject to adoption in a limited number of counties, each providing the exclusive method of appointment in adopting county or counties, all conflicting as to method of appointment, and many or all overlapping as to applicable territory. As a result there could be a different method of appointment in nearly every locality of the State without regard to need or other rational basis for classification. This is what the 1917 Amendment was designed to prohibit.

We do not now decide whether a classification of justices of the peace based on population, business, or other factors in selected counties would be reasonable and valid in a given situation. In the instant case, the crux of the matter is that nothing is "well known" or even "estimated" which makes any real distinction between the 28 and 72 counties with reference to the office of justice of the peace. Herein lies the difference between this and the *Harris* case.

The 1949 Act (Article 14A, Chapter 7, General Statutes of North Carolina) is local and special and contravenes the clause of the 1917 Amendment (N.C. Constitution, Art. II, s. 29) relating to the appointment of justices of the peace.

The 1955 Act authorized resident judges to make justice of the peace appointments throughout the State. It is suggested that the 1949 Act might be sustained on the ground that it is merely supplemental to and not contradictory of the 1955 Act. We do not agree. The 1955 Act does not purport to repeal and abrogate the other general methods of electing and appointing justices of the peace. It specifically provides that it is in addition to all other methods of appointment. On the other hand, the 1949 Act purports to exclude all other provisions for election and appointment in the territory of its application (except, of course, the filling of vacancies by clerks of superior court). The two Acts are in direct conflict. It is the 1955 Act that is supplemental; the 1949 Act purports to be exclusive and to abrogate all other enactments.

Having decided that the 1949 Act is unconstitutional, we do not

McIntyre v. Clarkson.

reach the question as to whether or not it was repealed by the 1955 Act. May two general laws which are in direct conflict and deal with identical subject matter subsist unimpaired?

The 1917 Amendment provides also that the General Assembly may not enact a local, private or special statute relating to the appointment of justices of the peace "by the partial repeal of a general law." Quaere: If the 1949 Act was "general," would it not be unconstitutional by reason of the partial repeal of G.S. 7-113, G.S. 7-114 and G.S. 7-115, rendering them operative only in limited territory? But we do not reach this question.

Article 14A, Chapter 7, of the General Statutes of North Carolina is unconstitutional and void. Therefore, the purported appointments of justices of the peace for Mecklenburg County by Judge Clarkson pursuant thereto are void. All acts done and proposed pursuant to the resolutions of the Board of County Commissioners of Mecklenburg County, adopting the said statute and appropriating funds for the payment of salaries and expenses of justices of the peace, are unlawful and a nullity.

The judgment below is
Reversed.

Higgins, J., Concurs in result.

Bobbitt, J., dissenting. The challenged 1949 Act provides that salaried justices of the peace appointed pursuant to its terms "shall continue to collect such fees as are provided by law with respect to criminal or civil cases and pay them into the general fund of the county." G.S. 7-120.4. There is no allegation that the fees to be collected and paid into the general fund of the county by the three salaried justices of the peace for the seven months period, December, 1960, through June, 1961, will be less than the $33,995.00 appropriated from the general fund of the county for the payment of their salaries and expenses. Hence plaintiff, having failed to allege facts sufficient to show irreparable injury to him as a taxpayer, is not entitled to maintain an action for injunctive relief.

The constitutional question plaintiff attempts to present casts a cloud upon the validity of every act of each of the three salaried justices of the peace. This creates a situation of such urgency and public importance that this Court should, in the exercise of its power "to issue any remedial writs necessary to give it a general supervision and control over the proceedings of the inferior courts" (N.C. Constitution, Art. IV, Sec. 8), proceed now to pass upon the constitutional question.

Is the 1949 Act, now codified as G.S. Chapter 7, Article 14A (G.S. 7-120.1 — G.S. 7-120.11, inclusive), unconstitutional on the ground it is a *local* act relating to the appointment of justices of the peace and therefore violative of Article II, Section 29, of the Constitution of North Carolina?

Plaintiff contends the 1949 Act is a local act because the county commissioners in only twenty-eight named counties are authorized to invoke its provisions. Citing *State v. Dixon,* 215 N.C. 161, 1 S.E. 2d 521, he contends an act applicable to less than half of the counties of North Carolina is a local act.

The Court does not accept plaintiff's said contention. The basis of decision, as I understand it, is that the 1949 Act cannot be sustained as a general law because there is no substantial basis for placing the twenty-eight covered counties in one category and the seventy-two excepted counties in another category.

In the light of our prior decisions, and mindful that "(i)n considering the constitutionality of a statute, every presumption is to be indulged in favor of its validity," *State v. Lueders,* 214 N.C. 558, 561, 200 S.E. 22, the 1949 Act, in my opinion, should not be declared unconstitutional on either ground.

Admittedly, the realization that the membership of the General Assembly as a whole had little knowledge of local, private or special needs and conditions, influenced the advocacy and adoption of Article II, Section 29. The 1949 Act, being *an enabling act,* vests in the county commissioners of each covered county the authority, after *their* appraisal of its local needs and conditions, to determine whether its provisions should be invoked. The 1949 Act is not self-operative. In the twenty-eight covered counties, the county commissioners *may,* but are not required, to invoke its provisions. Hence, the governing body of a covered county, which has knowledge of its local needs and conditions, is to determine whether the justices of the peace in such county are to be appointed and compensated as provided by the 1949 Act.

A contention that the 1949 Act unlawfully discriminates as between covered counties and excepted counties is unrealistic. In the first place, the constitutional doctrine prohibiting discrimination refers to discrimination as between citizens and not as between counties. Moreover, it is common knowledge that each county excepted from the provisions of the 1949 Act was so excepted because its own representatives in the General Assembly so requested. Any county now excepted would be readily made a covered county if its

representatives in the General Assembly should see fit to introduce a bill to accomplish this purpose.

It is noted, *with emphasis*, that, in respect of jurisdiction, procedure, etc., justices of the peace appointed by the resident superior court judge and compensated by salary as provided in the 1949 Act, have exactly the same status as justices of the peace in excepted counties. The 1949 Act in no way affects the legal rights or liabilities of any party to a civil or criminal action before a justice of the peace appointed and compensated in accordance with its provisions, whether such party be a resident of a covered county or a resident of an excepted county. Moreover, unlike the statute considered in *State v. Dixon, supra,* discussed below, the 1949 Act has no bearing upon the lawfulness of the conduct of persons either in a covered county or in an excepted county.

In Article II, Section 29, it is provided that "(t)he General Assembly shall not pass any local, private, or special act or resolution . . . relating to the appointment of justices of the peace," but "shall have power to pass general laws regulating matters set out in this section."

The power of the General Assembly to enact general laws relating to the appointment of justices of the peace *is not derived from* Article II, Section 29. Unless an act contravenes some prohibition or mandate of the Constitution of North Carolina or is in conflict with powers granted the Federal Government by the Constitution of the United States, the General Assembly has plenary legislative power. *Lassiter v. Board of Elections,* 248 N.C. 102, 102 S.E. 2d 853. See dissenting opinion of *Devin, J.* (later *C.J.*), in *State v. Dixon, supra,* p. 173. The question for decision is whether the 1949 Act is a *local* act, not whether it is a general law. Obviously, it is not a general law in the sense that it provides that justices of the peace in every county of the State shall be selected in exactly the same manner. Nor would it be a general law in this sense if no county were excepted. Even if no county were excepted, its provisions might be invoked by the county commissioners of only one county.

The question is whether an enabling act, the provisions of which may be invoked by the county commissioners of any one or all of twenty-eight counties, is a *local* act. It is noted: Of the State's total population of 4,556,155, 1,366,352 reside in these twenty-eight counties. (1960 census)

The 1916 constitutional amendments, including Article II, Section 29, became effective January 10, 1917.

In 1919, the General Assembly enacted "An Act to Appoint Justices

of the Peace for the Several Counties of North Carolina." Public Laws of 1919, Chapter 99. A similar statute, referred to as the Omnibus Justice of the Peace Act, has been enacted at each succeeding session of the General Assembly. To illustrate: The 1919 Act, in respect of Alleghany County, appoints as justices of the peace in the designated townships the individuals whose names are set forth below.

## "ALLEGHANY COUNTY.

*"Cherry Lane Township* — A. J. Bryan, Coy McCann.
*Whitehead Township* — T. A. Edwards, Joseph Wagoner.
*Glade Creek Township* — J. W. Belvins.
*Cranberry Township* — C. L. Upchurch."

In like manner, the 1919 Act appoints individuals as justices of the peace in designated townships in eighty-eight other counties.

To my mind, an act *appointing* a named individual as a justice of the peace for a designated township in a particular county is a local act relating to the appointment of a justice of the peace. Apparently, it was suggested that Article II, Section 29, might be circumvented by the inclusion of all such local acts in one (omnibus) statute.

No case has been presented to this Court for judicial determination as to the constitutionality of such Omnibus Justice of the Peace Act. However, prior to the enactment of said 1919 Act, the General Assembly, by resolution, requested this Court for advice as to whether "there is any provision in Article II, section 29, which would prohibit the General Assembly from enacting an omnibus justice of the peace bill." It appears further that this Court, in a "MESSAGE" addressed to the General Assembly and signed (apparently for the Court) by *Chief Justice Clark*, advised the General Assembly that this Court was "of the opinion that the bill is constitutional and not in contravention of the recent amendment, Article II, section 29, which prohibits the enactment of any local, private or special act relating to the appointment of justices of the peace, etc., but authorizes general laws regulating this and other matters contained in the section referred to." Advisory Opinions, 227 N.C. 717.

It is difficult for me to comprehend the (unstated) legal basis of said Advisory Opinion. It seems to me each such appointment is in fact and in law a local act and that its essential nature is not changed by the device of bracketing multiple local acts in a single statute. Indeed, with due deference, it is my opinion that the appointment by the General Assembly of designated individuals to serve as justices of the peace is precisely what Article II, Section 29, was intended to

prohibit. For present purposes, this comment is sufficient: If such Omnibus Justice of the Peace Act is not violative of Article II, Section 29, certainly there is no substantial basis for holding *an enabling act* such as that here challenged, which does not appoint any person as justice of the peace in any township or county, unconstitutional as violative of Article II, Section 29.

A 1919 Act (Public Laws of 1919, c. 277) entitled "AN ACT TO ESTABLISH A UNIFORM SYSTEM OF RECORDERS' COURTS FOR MUNICIPALITIES AND COUNTIES IN THE STATE OF NORTH CAROLINA," conferred authority for the establishment of such courts. Section 64 thereof provided that the 1919 Act "shall not apply" to forty-seven designated counties. Section 64 of the 1919 Act was codified as C.S. 1608. A 1921 Act (Public Laws of 1921, c. 110, s. 16) amended C.S. 1608 by striking Granville, Iredell and Cherokee from the list of *excepted counties,* thereby increasing the number of counties under the 1919 Act from fifty-three to fifty-six. Thereafter, the Iredell County Recorder's Court was established in the manner prescribed by the 1919 Act.

One Sherrill Harris, in *habeas corpus* proceedings, asserted he was unlawfully imprisoned pursuant to a purported judgment of said Iredell County Recorder's Court, and that the judgment was invalid because the statutes purporting to authorize its establishment were unconstitutional as violative of the provision of Art. II, Sec. 29, Constitution of North Carolina, that "(t)he General Assembly shall not pass any local, private, or special act or resolution relating to the establishment of courts inferior to the Superior Court."

This Court in *In re Harris* (1922), 183 N.C. 633, 112 S.E. 425, held that neither the 1919 Act nor the 1921 Act violated said provision of Art. II, Sec. 29. Primary consideration was devoted to the constitutionality of the 1919 Act. *Hoke, J.,* (later *C. J.*), *for a unanimous Court,* stressed the fact that the term "local act" had no fixed or generally accepted meaning. Hence, he reasoned, whether a particular act should be considered "local" must be determined, to a considerable extent, with reference to its nature and purpose and with reference to the nature and extent of the locality to which it applies.

The 1919 Act, as amended, is now codified as G.S. Ch. 7, Subchapter VI, "RECORDERS' COURTS," comprising Articles 24-29, inclusive. G.S. 7-264, as amended, provides that "(t)his subchapter shall not apply" to twenty-two designated counties. It is applicable to seventy-eight counties.

A 1953 Act (S.L. 1953, c. 998) amended G.S. 7-264 by striking

Johnston County from the list of excepted counties and by providing specifically that G.S. Ch. 7, Art. 24 should be applicable to municipalities in Johnston County. Thereafter, the Recorder's Court of Benson was established in the manner provided in said G.S. Ch. 7, Subchapter VI.

In *State v. Ballenger* (1957), 247 N.C. 216, 100 S.E. 2d 351, Ballenger asserted that the Recorder's Court of Benson was not a legally constituted court, that it lacked the power to issue the warrant on which he was tried in said court and in the superior court, and that the superior court had no jurisdiction to try him on such warrant. He attacked the Recorder's Court of Benson on the ground that the statutes authorizing its establishment were unconstitutional as violative of Art. II, Sec. 29.

This Court, in *S. v. Ballenger, supra,* basing its decision directly on *In re Harris, supra,* upheld the validity of the Recorder's Court of Benson and held constitutional the statutes under which it was established. *Denny, J.,* for a unanimous Court, said: "Consequently, we hold that Chapter 998 of the Session Laws of 1953, eliminating Johnston County from the list of counties excepted in G.S. 7-264 and making the provisions of Article 24 of Subchapter VI of Chapter 7 of the General Statutes, as amended, applicable to the municipalities in Johnston County, was tantamount to a re-enactment of *the general law* making it applicable to Johnston County." (My italics) Obviously, this Court did not consider the authority of *In re Harris, supra,* had been impaired by *State v. Dixon, supra,* or by any other decision of this Court.

While not directly involved, it seems appropriate to advert to the following statutory provisions.

1. G.S. Ch. 7, Subchapter VIII, consisting of Articles 33, 34 and 35, *confers authority* for the establishment of "CIVIL COUNTY COURTS." Art. 33, G.S. 7-308 *et seq.,* is not applicable to thirty-seven designated counties. G.S. 7-331. Art. 34, G.S. 7-332 *et seq.,* is not applicable to nine designated counties. G.S. 7-350.

2. G.S. Ch. 7, Subchapter IX, consisting of Art. 36, G.S. 7-384 *et seq.,* which *confers authority* for the establishment of "COUNTY CRIMINAL COURTS," is not applicable to sixty-two designated counties. G.S. 7-404.

3. G.S. Ch. 7, Subchapter X, consisting of Art. 37, G.S. 7-405 *et seq.,* which *confers authority* for the establishment of "SPECIAL COUNTY COURTS," is not applicable to sixty designated counties. G.S. 7-446.

Presumably, all of these enabling acts were adopted by the

General Assembly in reliance upon the decision of this Court in *In re Harris, supra.*

Emphasis is placed upon the diversity, in respect of geography, business, industry, wealth and population, as between the twenty-eight counties covered by the 1949 Act. Suffice to say, such diversity exists as between the counties covered by each of the enabling acts now codified as G.S. Ch. 7, Subchapters VI, VIII, IX and X. These facts are noted:

1. The seventy-eight counties to which Articles 24-29, inclusive, now applies include Mecklenburg (272,111), the most populous, and Tyrrell (4,520), the least populous. G.S. 7-264. Moreover, when the 1919 Act was held constitutional in *In re Harris, supra,* it applied to Mecklenburg and Tyrrell. Articles 24-29, inclusive, constitute a codification of said 1919 Act, as amended. When *In re Harris, supra,* was decided, fifty-six counties were covered. Now, seventy-eight counties are covered.

2. The sixty-three counties to which Article 33 applies include Mecklenburg and Tyrrell. G.S. 7-331.

3. The ninety-one counties to which Article 34 applies include Mecklenburg and Tyrrell. G.S. 7-350.

4. The thirty-eight counties to which Article 36 applies include Mecklenburg and Tyrrell. G.S. 7-404.

5. The forty counties to which Article 37 applies include Guilford (246,520) and Tyrrell. G.S. 7-446.

If the 1949 Act is vulnerable for the reason assigned, it would seem that each of the enabling acts now codified as G.S. Ch. 7, Subchapters VI, VIII, IX and X, is equally vulnerable on the same ground. In view of our decision in *In re Harris, supra,* followed by our decision in *State v. Ballenger, supra,* I am unwilling to cast a cloud upon the validity of past and future acts of inferior courts established pursuant to these enabling acts.

I am advertent to *State v. Williams,* 209 N.C. 57, 182 S.E. 711, where this Court held unconstitutional, as violative of Article II, Section 29, a 1925 Act (Public-Local Laws of 1925, c. 286) purporting to authorize the Board of County Commissioners of Cabarrus County to establish township recorders' courts. I agree that such an (enabling) act, applicable to a single county, must be considered a *local* act. Indeed, as indicated above, it was so considered by the General Assembly.

It is noted: The provision in Article II, Section 29, is against the *establishment* of courts inferior to the superior court by local, private or special act. Article II, Section 29, did not uproot or dis-

turb inferior courts *theretofore established* under local acts. Moreover, it was held that Article II, Section 29, did not prohibit the amendment (by local act) of local acts under which such pre-existing inferior courts had been established. *Provision Company v. Daves,* 190 N.C. 7, 128 S.E. 593; *State v. Horne,* 191 N.C. 375, 131 S.E. 753; *Williams v. Cooper,* 222 N.C. 589, 24 S.E. 2d 484; *Board of Managers v. Wilmington,* 237 N.C. 179, 188, 74 S.E. 2d 749; *In re Wingler,* 231 N.C. 560, 565, 58 S.E. 2d 372; *State v. Norman,* 237 N.C. 205, 210, 74 S.E. 2d 602; *State v. Furmage,* 250 N.C. 616, 619, 109 S.E. 2d 563. Hence, since the adoption of Article II, Section 29, our inferior courts have consisted of (1) *pre-existing* inferior courts established by local acts, a considerable number, and (2) inferior courts established under one of the enabling acts now codified in G.S. Chapter 7. As to local acts purporting to modify, in respect of a particular county, the provisions of such an enabling act, it is sufficient to say that the validity of such local acts has not been determined by this Court.

In *State v. Dixon, supra,* this Court, by a majority of four to three, held invalid "AN ACT TO DEFINE REAL ESTATE BROKERS AND SALESMEN; TO PROVIDE FOR THE REGULATION, SUPERVISION AND LICENSING THEREOF; TO CREATE A REAL ESTATE COMMISSION, AND PRESCRIBING THE POWERS AND DUTIES THEREOF; TO PROVIDE FOR THE ENFORCEMENT OF SAID ACT AND PENALTIES FOR THE VIOLATION THEREOF." Public Laws of 1937, Chapter 292.

In summary, this 1937 Act provided: To engage in the business of real estate broker or salesman in violation of its provisions was declared a misdemeanor, punishable as therein provided. It created the "North Carolina Real Estate Commission." Only persons licensed by the Commission could engage in such business. Applications, fees and qualifications for such license were prescribed. No license would be issued unless and until the applicant had passed an examination conducted by the Commission. While all other provisions purported to vest statewide authority in the "North Carolina Real Estate Commission," a final section (section 17½) provided that "this Act shall not apply" to sixty-four named counties.

The 1937 Act was held invalid on two separate grounds, *viz.:*

1. It was held unconstitutional as a local act regulating trade in violation of Article II, Section 29.

2. It was held invalid because in conflict with the provision of the Revenue Act providing that real estate brokers and salesmen "shall apply for and obtain from the Commissioner of Revenue a *State-wide license* for the privilege of engaging in such business or profession."

This excerpt from the opinion of the Court, by *Clarkson, J.*, indicates the emphasis placed upon the second ground of decision: "All real estate brokers in the State are required to pay the State privilege tax and all are subject to the same general laws in the conduct of their trade; yet, if the provisions of the instant act be upheld, a real estate broker who had paid his State tax would be deprived of the privilege of carrying on his trade in more than one-third of the counties in the State. For example, a broker seeking to sell a farm lying in two counties would be merely an honest business man conducting a legitimate business if the transaction were completed on one corner of the farm, but would be criminal if it were completed at another point on the same farm. The fatal shortcoming of the 1927 Real Estate Brokers' Act was not so much that it was a local act as it was that the act discriminated *within* a class, to wit: the real estate brokers licensed to do business throughout the State."

With reference to the first ground of decision, the Court in *State v. Dixon, supra,* does not purport to overrule *In re Harris, supra.* Indeed, the opinion quotes with approval from *In re Harris, supra.* The only ground on which the *Harris* case is distinguished in this: In *Harris* fifty-six counties were covered and forty-four were excepted. In *Dixon,* thirty-six counties were covered and sixty-four counties were excepted.

Two further observations in relation to *State v. Dixon, supra:* The second ground of decision, standing alone, was sufficient to uphold the lower court's allowance of Dixon's motion for arrest of judgment. In my view, whether an (enabling) act applies to more or less than half of the total number of North Carolina counties is not a proper test for determining whether a particular statute is a local act within the meaning of Article II, Section 29.

The converse of the factual situation in *State v. Dixon, supra,* was considered in *State v. Felton,* 239 N.C. 575, 80 S.E. 2d 625, where it was held that an act purporting to legalize gambling in Currituck County in contravention of the general criminal laws of the State was invalid.

It is noted that statutory provisions, rather than the provisions of Article VII, Section 5, of the Constitution of North Carolina, now govern the manner in which justices of the peace are to be selected. G.S. 7-112.

In summary:

1. This Court has not passed upon any statute challenged as unconstitutional under Article II, Section 29, on the ground it was a local act relating to the appointment of justices of the peace. (Apparently,

the Court recognizes as authoritative the said 1919 Advisory Opinion relating to the 1919 Omnibus Justice of the Peace Act.)

2. This Court has upheld the constitutionality of the statute now codified as G.S. Chapter 7, Articles 24-29, inclusive, in *In re Harris, supra,* and *State v. Ballenger, supra,* notwithstanding extreme diversity as between covered counties and as between excepted counties. It has declared unconstitutional an enabling act providing for the creation of township recorders' courts in Carbarrus County. *State v. Williams, supra.*

3. In *State v. Dixon, supra,* the challenged statute undertook to declare criminal in certain counties conduct that was authorized and lawful under the general laws of the State.

4. This Court has declared unconstitutional statutes relating to or regulating matters other than courts as local acts violative of Article II, Section 29. These statutes, principally, relate to a single county, *e.g., Idol v. Street,* 233 N.C. 730, 65 S.E. 2d 313, and cases cited.

In *Coastal Highway v. Turnpike Authority,* 237 N.C. 52, 74 S.E. 2d 310, five counties were involved. In that case, a 1949 Statute purported to authorize the Municipal Board of Control to "enter an order creating a municipal corporation." This 1949 Statute was held invalid as an attempt to delegate legislative power and authority contrary to the provisions of Article II, Section 1, of the Constitution of North Carolina. Since the alleged corporate status of Coastal Highway was based on an order of said Municipal Board of Control, this Court held plaintiff had no legal corporate status. Thereafter, the Court proceeded to declare unconstitutional on the ground it violated Article II, Section 29, an amendatory 1951 Act under which Coastal Highway's authority as therein defined was "(t)o construct, maintain, repair and operate the toll road, toll bridge or turnpike at such location within the North Carolina Counties of Currituck, Dare, Tyrrell, Hyde, and Carteret as shall be adopted by the municipal corporation." It is noted that the *Coastal Highway* case involved a particular project.

In *In re Harris, supra,* Hoke, J. (later C.J.), fully advertent to conflicting definitions by text writers and by courts of other jurisdictions, reached the conclusion the term "local act" as used in Article II, Section 29, had no fixed or generally accepted meaning. If it had no fixed or generally accepted meaning when Article II, Section 29, was adopted, I am unwilling to attempt now to define the term with exactitude. In short, now as then, whether a particular act should be considered local must be determined, to a considerable extent, with reference to its nature and purpose and with reference

to the nature and extent of the locality to which it applies. In the light of our prior decisions, I cannot say the 1949 Act, an enabling act applicable to twenty-eight counties with a population of 1,356,352, is a local act within the meaning of Article II, Section 29.

The Court recognizes the well established rule that all reasonable doubt is to be resolved in favor of the validity of an act of the General Assembly and that such act will not be declared unconstitutional unless it is clearly so. In my opinion, application of this principle requires that the constitutionality of the 1949 Act be upheld. Hence, I vote to affirm Judge Campbell's judgment.